UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
─────────────────────────────────────X

WILHELMSEN PREMIER MARINE FUELS AS

                                        07 Civ. 5798 (CM)

        Plaintiff,

    against

UBS PROVEDORES PTY LTD. AND
RAECORP INTERNATIONAL PTY LTD.,

        Defendants
─────────────────────────────────────X

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION FOR AN
ORDER VACATING THE <u>EX PARTE</u> ORDERS FOR PROCESS OF MARITIME
ATTACHMENT AND GARNISHMENT PURSUANT TO SUPP. ADM. RULE B, OR, IN
THE ALTERNATIVE, CERTIFYING THE ISSUE OF WHETHER DEFENDANTS
HAVE PROPERTY SUBJECT TO ATTACHMENT IN THE DISTRICT FOR
INTERLOCUTORY APPEAL PURSUANT TO 28 U.S.C. § 1292**

BETANCOURT, VAN HEMMEN, GRECO & KENYON
46 Trinity Place,
New York, NY 10006
(212) 297-0050

<u>Of Counsel</u>
Jeanne-Marie D. Van Hemmen (JV 6414)
Todd P. Kenyon (TK 7654)

# TABLE OF CONTENTS

Page

Table of Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii, iii, vi

Preliminary Statement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Statement of Facts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Argument

      POINT I

            Plaintiff has the Burden of Proving Its Entitlement to a
            Rule B Attachment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

      POINT II

            Plaintiff Does Not Have a Valid Admiralty Claim Because the
            UBS/Wilhelmsen Contract Is Not a Maritime Contract . . . . . . . . . . . . . . . . . . . . 7

      POINT III

            Plaintiff Has Failed to Show That It Has a Valid
            Alter Ego Claim . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

      POINT IV

            Defendants Property Was Not Found Within the District . . . . . . . . . . . . . . . . . 17

      POINT V

            If the Present Motion Is Denied, Defendants Respectfully Ask the Court to
            Certify an Interlocutory Appeal Pursuant to 28 U.S.C.§1292(B) . . . . . . . . . . . . 19

Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

## TABLE OF AUTHORITIES

Case                                                                    Page

American Protein Co. v. AB Volvo,
    844 F.2d 56 (2d Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Aston Agro-Industrial v. Star Grain Ltd., slip op.,
    2006 WL 3755156, (S.D.N.Y., Dec. 20, 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Atlantic Mutual Ins. Co. v. Balfour Maclaine Int'l Ltd.,
    968 F.2d 196 (2d Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Aqui Stoli Shipping Ltd. v. Gardner Smith Pty Ltd.,
    460 F.2d 434 (2d Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 17, 18. 21

Bay Casino, LLC v. M/V Royal Empress,
    1998 WL 56677219 (E.D.N.Y. Aug. 21, 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Consub Del. LLC v. Schahin Engenharia Limitada,
    2007 W.L. 473728 (S.D.N.Y. Feb. 13, 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . 19, 20, 21

Compania Sudamerica de Vapores v. Sinochem Tianjin Co.,
    2007 AMC 1467 (S.D.N.Y.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Dolco Investments, Ltd. v. Moonriver Development, Ltd.,
    486 F.Supp.2d 261 (S.D.N.Y. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Emerson G.M.Diesel, Inc. v. Puget Sound Production Credit Assoc.
    and Three S Fisheries, Corp.,
    1986 AMC 2501 (W.D.Wa.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Exxon Corp. v. Central Gulf Lines, Inc.,
    500 U.S. 603 (1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 11, 13

Fednav, Ltd. v. Isoromar, S.A.,
    925 F.2d 599 (2d Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Folksamerica Reins. Co. v. Clean Water of New York, Inc.,
    413 F.3d 307(2d Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

In Re Llloyd's Am. Trust Fund Litig.,
    1997 WL 458739 (S.D.N.Y. Aug. 12, 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Kirno Hill Co. v. Holt,
    618 F.2d 982, 985 (2d Cir. 1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Klein v. Vision Lab Telecom, Inc. ,
    399 F. Supp. 2d 528 (S.D.N.Y. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Maersk, Inc. v. Neewra, Inc.,
    443 F.Supp.2d 519 (S.D.N.Y. 2006 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Maritima Petroleo E Engenharia Ltda. v. Ocean Rig 1 and Ocean Rig 2,
    78 F. Supp. 2d 162 (S.D.N.Y. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 10

Matter of Arbitration between Holborn Oil Trading, Ltd. v. Interpol Bermuda Ltd.,
    774 F. Supp. 840 (S.D.N.Y. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Miravalles Compania Naviera, SS v. The Nisho Co.,
    207 F. Supp. 716 (E.D.N.Y. 1962) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Northern Southern Railway Co. v. Kirby,
    543 U.S.14 (2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Pacific Surety Co. v. Leatham & Son Towing & Wrecking Co.,
    151 F. 440 (7th Cir. 1907) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Planned Premium v. Int'l Ins. Agents,
    1991 AMC 2918 (5th Cir.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Seamar Shipping Corp. v. Kremikovtztrade Ltd., et al.,
    461 F.Supp.2d 222 (S.D.N.Y. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17, 18, 20, 21

Selover v. Schoellkopf, et al.,
    86 F. 656 (2d Cir. 1898) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Shipping Financial Services Corp. v. William Drakos, et al.,
    1998 AMC 1578 (2d Cir.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 13

Stolt- Nielsen Transp. Group, Inc. v. Celanese AG,
430 F.3d 567 (2d Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Tankship Int'l LLC v. El Paso Merchant Energy-Petroleum Co., et al.,
    428 F.Supp. 2d 93 (D. Ct. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

The Thames,
    10 F. 848 (S.D.N.Y. 1881) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Ullises Shipping Co. v. FAL Shipping Co.,
    415 F. Supp.2d 318, 323 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Wajilam Exports v. Atlshipping Ltd.,
    475 F.Supp.2d 275 (S.D.N.Y. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 16

Williamson v. Recovery Ltd. Partnership,
    2007 U.S.Dist. Lexis 4438 (S.D.N.Y. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Winter Storm Shipping Ltd. v. TPI,
    310 F.3d 263 (2d Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17, 18, 20

World Reach Shipping, Ltd. v. Industrial Carriers, Inc.,
    2006 U.S. Dist. LEXIS 83224 (S.D.N.Y. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Wm. Passalacqua Builders, Inc. v. Resnick Developers South, Inc.,
    933 F.2d 131 (2d Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Federal Rules

Fed. R. Civ. P., Adm. Supp. Rule B . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 5, 16,17, 22

Fed. R. Civ. P. Adm. Supp. Rule. E . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 5, 15, 16, 22

28 U.S.C. § 1291 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

28 U.S.C. § 1292 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Other

Jillian L. Benda, Comment, No Calm after the Storm: The Rise of the Rule B Attachment
    Cottage Industry, 31 Tul.Mar. L.J.95, 107-08 (Winter 2006) . . . . . . . . . . . . . . . . . . . . . 20

Thomas J. Shoenbaum, Admiralty & Maritime Law, Practitioners Treatise Series,
    p. 120 (Third Ed., West, 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Uniform Commercial Code, N.Y.U.C.C. Law §§4-A-502 to 504 . . . . . . . . . . . . . . . . . . . . . . . 17

**Preliminary Statement**

Defendants, UBS Provedores Pty. Ltd. ("UBS") and Raecorp International Pty. Ltd.

("Raecorp"), by and through their undersigned counsel, Betancourt, Van Hemmen, Greco &

Kenyon, make a restricted appearance pursuant to Fed. R. Civ. P., Supp. Adm. R. E(8)("Restricted

Appearance"), for the limited purposes of the instant motion and respectfully submit this

Memorandum of Law in Support of Defendants' Motion, pursuant to Fed. R. Civ. P., Supp. Adm.

R. B & E(4)(f), to (1)  Vacate the <u>Ex</u> <u>Parte</u> Orders directing the Clerk to issue  Process of Maritime

Attachment and Garnishment against UBS and Raecorp and the Processes of Maritime Attachment

and Garnishment obtained and served by Plaintiff Wilhelmsen Premier Marine Fuels AS

("Wilhelmsen" and/or "Plaintiff") thereunder; or, in the alternative, to (2) certify an interlocutory

appeal pursuant to 28 U.S.C. § 1292(b) of this motion.

Wilhelmsen obtained the orders of attachment against UBS and Raecorp by alleging it was

a supplier of marine fuel oil to UBS pursuant to a maritime contract between Wilhelmsen and UBS

("UBS/Wilhelmsen Contract").  Thereafter, Wilhelmsen amended its complaint to allege Raecorp

was the alter ego of UBS by virtue of its domination over UBS' business affairs.  As set forth in

greater detail below, the UBS/Wilhelmsen Contract is not maritime and Wilhelmsen's allegations

against Raecorp are legally insufficient to support a Rule B attachment.

The services provided by Wilhelmsen pursuant to the UBS/Wilhelmsen contract are a

combination of brokerage services, through which Wilhelmsen introduced UBS to physical suppliers

of marine fuel oil, and financing agreement, accomplished by means of Wilhelmsen's simultaneous

purchase and sale of marine fuel oil from the physical supplier to UBS.  The physical supplier

delivered the product to the vessels UBS designated.  The UBS/Wilhelmsen contract facilitated

UBS' performance of its contractual obligation to the U.S. Navy to supply marine fuel oil to U.S.

navy vessels.  As such, it is UBS that is a "supplier of marine fuel oils" to vessels, through UBS' contract with the Navy.  The UBS/Wilhelmsen Contract is a preliminary or shoreside contract, to which maritime law does not extend.  Accordingly, Wilhelmsen does not have a maritime claim against the Defendants.  This Court, therefore, does not have subject matter jurisdiction over this dispute, and Wilhelmsen is not entitled to a Rule B attachment.

The order of attachment of Raecorp's assets, and all processes thereunder, should be vacated and this action dismissed because Wilhelmsen fails to make the requisite showing against Raecorp in its pleadings.  Wilhelmsen's conclusory allegation that Raecorp so dominates UBS' business or is a successor of UBS, such that it is liable for UBS' debts, is based on only a few benign factual allegations.  These benign allegations are not sufficient to constitute a prima facie claim of alter ego liability for purposes of a Rule B attachment.  Accordingly, even if Wilhelmsen's claim against UBS were maritime, which is denied, it has not asserted a sufficient claim against Raecorp.  The Rule B attachment against Raecorp should be vacated on this basis as well.

Wilhelmsen attached electronic fund transfers ("EFTs") to and from UBS and Raecorp while they passed through New York banks.  UBS and Raecorp did not have a property interest in them, and they were, therefore,  not subject to attachment under Rule B.

If the present motion is denied, UBS and Raecorp respectfully ask the Court to certify an interlocutory appeal to the Second Circuit Court of Appeals on the specific question of whether an EFT may constitute the "property" of a defendant subject to attachment under Rule B.

**Statement of Facts**

1. The UBS/Wilhemsen Contract

UBS is a company organized under the laws of Australia, with a place of business in Morningside, QLD, Australia.  UBS is in the business of provisioning military entities including the provision of marine fuel oil to military vessels.  (Declaration of William Rae, dated September 13, 2007, at ¶ 2 (hereinafter referred to as "Rae Dec")).  Wilhelmsen is a company organized under the laws of Norway, with a place of business in Lysaker, Norway. (See Amended Complaint, ¶ 2).  It is a bunker brokerage and consultancy business. (See Wilhelmsen's website page, attached as Exhibit 1 to the Attorney Certification of Jeanne-Marie Van Hemmen (hereinafter referred to as "Van Hemmen Cert")).  Also, Wilhelmsen sometimes finances its clients' purchases of marine fuel oil.  As a means of financing its clients' marine fuel oil purchases, Wilhelmsen acts as a trader (Rae Dec, ¶¶ 5 and 6; Wilhelmsen website page, attached as Exhibit 1 to the Van Hemmen Cert).  Wilhelmsen describes itself in relation to suppliers of bunkers thus: "[Wilhelmsen] enjoys credit facilities with hundreds of suppliers world wide, including all the major suppliers."

On September 21, 2006, UBS entered into a marine fuel oil requirements contract with the U.S. Defense Energy Support Center ("US Navy") to provide marine fuel oil to various U.S. military and federal civilian vessels at various ports throughout Asia ("DESC Contract").  (Rae Dec, ¶¶ 5 and 6) UBS contracted with Wilhelmsen to assist it meet its marine fuel oil requirements under the DESC Contract.  In particular, UBS relied on Wilhelmsen to introduce it to physical suppliers in the ports in which UBS was obligated to provide marine fuel oil to the Navy.  Also, since UBS was a stranger to these physical suppliers and, therefore, unable to purchase the marine fuel oil directly from them on credit, UBS relied on Wilhelmsen to extend it credit terms.  The financing component

3

of Wilhelmsen's services was accomplished by means of a simultaneous purchase and sale from the physical supplier to Wilhelmsen and from Wilhelmsen to UBS. Wilhelmsen never obtained physical possession of the product. Instead, delivery of the product was performed by the physical supplier directly to the vessels of UBS' customer. (Rae Dec, ¶¶ 4, 5 and 6).

UBS and Wilhelmsen operated pursuant to this arrangement from roughly October, 2006 through April, 2007. A dispute arose between UBS and Wilhelmsen over invoices Wilhelmsen submitted to UBS for the sale of marine fuel oil delivered to US navy vessels in the port of Sasebo, Japan. Sumitomo Corp. ("Sumitomo") was the physical supplier of the marine fuel out of which the dispute arose. Sumitomo delivered the marine fuel oil to the US Navy vessels in Sasebo. The dispute arises out of Wilhelmsen's failure to adequately document its invoices submitted to UBS. Because of the inadequate documentation, the US Navy has refused to pay UBS. UBS, in turn, cannot pay Wilhelmsen. (Rae Dec, ¶ 7)

2. The EFTs

Neither UBS nor Raecorp maintains any bank accounts in New York, nor has it paid debts to creditors by transferring funds into their creditors' New York bank accounts. (Rae Dec, ¶ 8). Instead, the UBS and Raecorp funds attached in New York were electronic fund transfers ("EFTs") that were passing through New York banks on their way out of state to other accounts. In particular, Citibank garnished three transfers from third parties for the benefit of UBS, one in the amount of $210,795.94, one in the amount of $289,378.30 and one in the amount of $2,619.67. All tolled, New York banks have garnished $502,793.91 transferred from third parties for the benefit of UBS. ("Third Party Transfers"). (Van Hemmen Cert, ¶¶ 4, 5 & 6).

In addition, JP Morgan garnished four transfers from UBS for the benefit of third parties, one in the amount of $275,399.86, two in the amount of $68,865.12 and one in the amount of $29,610.37. HSBS garnished one transfer from UBS for the benefit of a third party in the amount of $68,885.12. (Van Hemmen Cert, ¶¶ 7 & 8) ("UBS Transfers"). The UBS Transfers total $511,625.58. A total of $1,014,419.40. has been garnished to date.

## Argument

### Point I

### PLAINTIFF HAS THE BURDEN OF PROVING ITS ENTITLEMENT TO A RULE B ATTACHMENT

A plaintiff when seeking an *ex parte* order of attachment pursuant to Rule B must make a prima facie showing that a maritime claim appears to exist against the defendant and that the defendant is not present in the district. Fed. R. Civ. P., Adm. Supp. Rule B. The sufficiency of Rule B attachments are, however, subject to a post-attachment hearing. Rule E(4)(f) provides any person claiming an interest in the attached property with "a prompt hearing at which the plaintiff shall be required to show why the . . . attachment should not be vacated or other relief granted consistent with these rules." Fed. R. Civ. P., Adm. Supp. Rule E(4)(f). "Rule E(4)(f) is designed to satisfy the constitutional requirement of due process by guaranteeing . . . a prompt post-seizure hearing at which [the property owner] can attack the complaint, the arrest, the security demanded, or any other alleged deficiency in the proceedings." Fed. R. Civ. P., Adm. Supp. Rule E(4)(f), Advisory Committee's Note. The plaintiff thus has the burden under Rule E to show why the attachment should not be vacated.

To sustain an attachment at a Rule E hearing, the plaintiff must show that "(1) it has a valid prima facie admiralty claim against the defendant; (2) the defendant cannot be found within the

district; (3) the defendant's property may be found within the district; and (4) there is no statutory or maritime law bar to the attachment." Aqua Stoli Shipping Ltd. v. Gardner Smith Pty Ltd, 460 F.3d 434, 445 (2d Cir 2006). If the plaintiff does not meet this burden, the court must vacate the attachment. Id.

To determine whether a plaintiff has a valid admiralty claim, courts have applied a "reasonable grounds" test. See Compania Sudamerica de Vapores v. Sinochem Tianjin Co., 2007 AMC 1467 (S.D.N.Y. 2007); Williamson v. Recovery Ltd. Partnership, 2007 U.S.Dist. Lexis 4438 (S.D.N.Y. 2007); Maersk, Inc. v. Neewra, Inc., 443 F.Supp.2d 519 (S.D.N.Y. 2006). "[C]ourts have compared the showing required under a 'reasonable grounds' analysis to the more familiar standard of probable cause." Wajilam Exports v. Atlshipping Ltd., 475 F.Supp.2d 275, 279 (S.D.N.Y. 2006). Probable cause requires less than a preponderance of the evidence, "but nevertheless calls for a 'fair probability' that the asserted facts are true." Compania Sudamerica, 2007 AMC at 1469.

For the reasons set forth more fully below, Wilhelmsen cannot meets it burden of establishing by a fair preponderance, that it has a valid admiralty claim against UBS, that it has reasonable grounds for its allegations against Raecorp of alter ego liability or that Defendants property was found within this District. Accordingly, Wilhelmsen's Rule B Attachments against UBS and Raecorp should be released immediately and this matter dismissed with prejudice.

**Point II**

**PLAINTIFF DOES NOT HAVE A VALID ADMIRALTY CLAIM
BECAUSE THE UBS/WILHELMSEN CONTRACT IS NOT A MARITIME CONTRACT**

A maritime contract is one that "relates to a ship in its use as such, or to commerce or to navigation on navigable waters, or to transportation by sea or to maritime employment." Stolt-Nielsen Transp. Group, Inc. v. Celanese AG, 430 F.3d 567, 572 (2d Cir. 2005)(quoting CTI-Container Leasing Corp. v. Oceanic Operations Corp., 682 F.2d 377, 379 (2d Cir. 1982). In determining whether a contract falls within admiralty jurisdiction, the "true criterion is the nature and subject matter of the contract, having reference to maritime service or maritime transactions." Exxon Corp. v. Central Gulf Lines, Inc., 500 U.S. 603, 610 (1991)(quoting Ins. Co. v. Dunham, 78 U.S. 1 at 26 (1871)); See also Northern Southern Railway Co. v. Kirby, 543 U.S.14, 24 (2004). "Lower courts are to make a case by case judgment of such a contract based upon the 'subject matter of the . . . contract' and 'the services performed under the contract.'" Aston Agro-Industrial v. Star Grain Ltd., slip op., 2006 WL 3755156, * 2 (S.D.N.Y.), citing Exxon Corp. v. Central Gulf Lines, Inc., 500 U.S. 603, 612 (1991). "The only general rule is that to be a maritime contract, the subject matter of the contract must be <u>directly</u> and <u>immediately</u> related to the operation of a vessel and navigation. It is not enough that the contract relate in some preliminary (shoreside) manner to maritime affairs." 1 Thomas J. Shoenbaum, Admiralty & Maritime Law, Practitioners Treatise Series, p. 120 (Third Ed., West, 2001)(emphasis added).

Additionally, the Second Circuit has articulated a "threshold inquiry in analyzing whether contractual rights are maritime in nature."[1]

---

[1]

The Second Circuit's "threshold inquiry" survived the U.S. Supreme Court's most recent admiralty decision on this issue. See Folksamerica Reins. Co. v. Clean Water of New

Before attempting to categorize contractual rights as maritime or non-maritime, a federal court must first consider whether an issue related to maritime interests has been raised. . . . For this reason, the question of whether a dispute falls within admiralty jurisdiction cannot be divorced from the 'purposes for which admiralty and maritime jurisdiction was granted.' [citations omitted].

Admiralty jurisdiction was created to provide a neutral federal forum and a uniform body of law to adjudicate rights and liabilities as they relate to the trafficking of seafaring vessels. [citation omitted].

Atlantic Mutual Ins. Co. v. Balfour Maclaine Int'l Ltd., 968 F.2d 196, 199 - 200 (2d Cir. 1992);

Maritima Petroleo E Engenharia Ltda. v. Ocean Rig 1 and Ocean Rig 2, 78 F. Supp. 2d 162, 166 (S.D.N.Y. 1999).

An analysis of the dispute between UBS and Wilhelmsen and the subject matter and nature of the services provided by Wilhelmsen to UBS establishes that this matter is too attenuated from the "trafficking of seafaring vessels" to justify application of this Court's admiralty jurisdiction.

**A        The Dispute Does Not Demand a Neutral Federal Forum**

The dispute between UBS and Wilhelmsen involves whether Wilhelmsen is obligated to further document its invoices prior to its entitlement to payment under the UBS/Wilhelmsen Contract. That is a garden variety contract issue that does not require a "neutral federal forum and a uniform body of law to adjudicate rights and liabilities as they relate to the trafficking of seafaring vessels." See Emerson G.M. Diesel, Inc. v. Puget Sound Production Credit Assoc. and Three S Fisheries, Corp., 1986 A.M.C. 2501, 2502 (W.D.Wa.)(refusing to grant admiralty jurisdiction to a ship repairer's claim against the vessel owner's insurer for repair costs to the vessel, stating, "[w]hile there may be a rational for a specialized and uniform body of law concerning navigation and commerce, . . . there is no apparent reason why basic contract principles involved here require a specialized admiralty

York, Inc., 413 F.3d 307, 313 (2d Cir. 2003).

8

court").  The UBS/Wilhelmsen dispute does not involve failure to deliver marine fuel oil to a vessel, delays to a vessel arising out of the late delivery of marine fuel oil or other issues involving vessel operations.  In this case, the vessel received its marine fuel oil and presumably the physical supplier was paid since Wilhelmsen has alleged in its verified complaint that it suffered damages.  Nothing that impacts the "trafficking" of vessels is at issue here.  Instead, a dispute has arisen between a provider of marine fuel oil, UBS, and its shoreside agent, or middleman, Wilhelmsen, concerning obligations arising out of a shoreside contract.  The Second Circuit's threshold inquiry concerning the nature of the dispute indicates the UBS/Wilhelmsen Contract should not be afforded admiralty jurisdiction.

**B     The Nature of the Services Performed is not Maritime**

The services provided by Wilhelmsen under the UBS/Wilhelmsen Contract are not uniquely maritime either.  Wilhelmsen is simply a middleman between UBS, a provider of marine fuel oil to the U.S. Navy, and Sumitomo Corp., a physical supplier of marine fuel oil to U.S. Navy vessels.  Wilhelmsen neither promised to provide a shipowner with marine fuel oil, nor undertook to deliver marine fuel oil to a ship.  Instead, Wilhelmsen provided UBS two distinct services: 1) an introduction to physical suppliers in the relevant ports; and 2) financing.  It provided UBS financing by buying the marine fuel oil from the physical supplier, with whom it "enjoys credit facilities," and simultaneously selling the marine fuel oil to UBS on credit terms.

The land locked nature of Wilhelmsen's business is revealed by its web-site pages.  It describes its aim "to be the leading, independent, global bunker broker."  It distinguishes itself from "suppliers" of marine fuel oil and establishes itself as a financier, when it states that it "enjoys credit facilities with hundreds of suppliers worldwide."  Its parent company's website describes

Wilhelmsen's business as a "bunker brokerage and consultancy as well as bunker trading and hedging." These services are land-based services, preliminary to maritime contracts for the actual provision of marine fuel oils to vessel owners. They do not require the Court's admiralty jurisdiction for resolution of disputes arising out of them.

Contracts for brokerage services leading to the execution of maritime contracts are generally not afforded admiralty jurisdiction. See Shipping Fin. Serv. Corp. v. William Drakos, et al., 140 F.3d 129 (2d Cir. 1998)(no admiralty jurisdiction for charter brokering contract); See also Selover v. Schoellkopf, et al., 86 F. 656, 657 (2d Cir. 1898)(no admiralty jurisdiction for brokerage contract to produce freights for a vessel owner's vessels); Maritima Petroleo E Engenharia Ltda. v. Ocean Rig 1 AS and Ocean Rig 2 AS, 78 F. Supp. 2d 162, 169 (S.D.N.Y. 2000)(no admiralty jurisdiction for a contract to furnish a specified charterer, pursuant to specified charter party terms, for two oil rigs, notwithstanding that the owner of the rigs was obligated under the contract to charter out the rigs if the specified charterer was willing to do so); Tankship Int'l LLC v. El Paso Merchant Energy-Petroleum Co., et al., 428 F.Supp. 2d 93, 99(D. Ct. 2006)(no admiralty jurisdiction over charter brokerage contract stating that "it is apparent that a contract for brokerage services would not be viewed by the Second Circuit as affecting maritime commerce").

Contracts through which third parties finance or guarantee the performance of maritime contracts also are not afforded admiralty jurisdiction. See Planned Premium v. Int'l Ins. Agents, 1991 AMC 2918 (5th Cir.)(no admiralty jurisdiction for a contract with vessel owners to finance their marine insurance premiums); See also Fednav, Ltd. v. Isoromar, S.A., 925 F.2d 599, 601 (2d Cir. 1991)(no admiralty jurisdiction for an agreement to finance the settlement of a cargo claim); Miravalles Compania Naviera, SS v. The Nisho Co., 207 F. Supp. 716 (E.D.N.Y. 1962)(no admiralty

10

jurisdiction for a surety contract guaranteeing performance of a charter party); <u>Pacific Surety Co. v. Leatham & Son Towing & Wrecking Co.</u>, 151 F. 440 (7th Cir. 1907)(same).

The <u>Pacific Surety</u> Court described the surety agreement at issue in that case this way: "the money liability is assumed in a new contract, under a new form, and by a new party and is thus wholly distinguishable from the original maritime contract." <u>Pacific Surety</u>, 151 F. at 444. Similarly, the UBS/Wilhelmsen Contract is a new contract, distinct from UBS' contract to supply marine fuel oil to the Navy. It comes under a new form and by a new party. Through it, Wilhelmsen merely guarantees, or finances, UBS' payment to the physical supplier, Sumitomo. It is thus wholly distinguishable from UBS' original maritime contract with the U.S. Navy. Accordingly, it should not be afforded admiralty jurisdiction.

<u>Exxon Corporation v. Central Gulf Lines, Inc.</u>, 500 U.S. 603 (1991) does not demand a different result. At issue in the <u>Exxon</u> case was jurisdiction over a marine fuel oil requirements contract in which Exxon agreed to supply fuel oil to a corporation's vessel, either directly in ports where Exxon had its own supplies, or through a subcontractor at those ports where Exxon had to rely on local suppliers. <u>See</u> <u>Exxon</u>, 500 U.S. at 605. When Exxon sued the vessel owner for payment under the requirements contract, the District Court for the Southern District of New York permitted Exxon's claim as direct supplier to come under admiralty jurisdiction. But it denied jurisdiction over the claim involving Exxon as agent. In doing so, the district court relied on a <u>per se</u> admiralty rule which precluded all agency contracts from admiralty jurisdiction. The Second Circuit Court of Appeals affirmed, and the U.S. Supreme Court grant <u>certiorari</u>.

The U.S. Supreme Court overturned the <u>per se</u> admiralty rule that precluded agency contracts from admiralty jurisdiction and instructed lower courts to "focus its jurisdictional inquiry upon

whether the nature of the transaction was maritime." Id. at 611. The case was remanded for consideration of this issue. Ultimately, it was determined that Exxon's contract with the vessel operator to supply its vessels with marine fuel oil was a maritime contract, even though Exxon used a subcontractor to perform the service. Id.

The UBS/Wilhelmsen Contract bears little resemblance to Exxon's. Exxon had a contract with a ship operator to provide marine fuel oil to ships. Exxon's contract with Waterman is the same as UBS' contract with the U.S. Navy. Admiralty law applies to it under the Exxon decision. The services performed by Wilhelmsen, however, are not provided to a ship operator, nor are they delivered to a ship. They were performed electronically from a remote office and constituted no more than a combination of brokering, i.e. the introduction of UBS to Sumitomo, and a financing agreement, i.e. the back to back purchase and sale which has the effect of extending credit to UBS and guaranteed payment to Sumitomo. Accordingly, the subject matter of the UBS/Wilhelmsen Contract is not such that this Court should extend its admiralty jurisdiction to a dispute arising out of it.

**C       The UBS/Wilhelmsen Contract is a Preliminary Services Contract to which Admiralty Jurisdiction does not Extend**

The preliminary services doctrine provides that disputes arising out of preliminary services contracts do not support admiralty jurisdiction. See, e.g. The Thames, 10 F. 848 (S.D.N.Y. 1881)("The distinction between preliminary services leading to a maritime contract and such contracts themselves has been affirmed in this Country from the first . . ."). The rationale behind the doctrine is that services too preliminary to, as opposed to being a part of, maritime contracts are too remote to be heard as maritime claims. Id. The UBS/WIlhelmsen Contract, being preliminary to

UBS' performance of its maritime contract with the U.S. Navy, is excluded from admiralty jurisdiction pursuant to this age-old principle.

The <u>Drakos</u> Court considered whether the <u>per se</u> preliminary services contract doctrine remained good law since the U.S. Supreme Court overturned the closely related <u>per se</u> exclusion of agency contracts in its <u>Exxon</u> decision. <u>Shipping Fin. Serv. Corp. V. William J. Drakos, et al.</u>, 140 F.3d 129, 133 (2d Cir. 1997). The <u>Drakos</u> Court ultimately declined to decide the issue and determined the charter brokerage contract at issue in that case was not a maritime contract under either the preliminary services contracts doctrine or the "nature and subject matter analysis." <u>Id</u>. at 134. As with the <u>Drakos</u> contract, the UBS/ Wilhelmsen Contract is excluded from admiralty jurisdiction under both doctrines, i.e. the <u>per se</u> exclusion of preliminary service contracts or the nature and subject matter analysis.

Since the UBS/Wilhelmsen Contract is not capable of supporting admiralty jurisdiction, this Court should vacate the Rule B attachment of UBS' and Raecorp's EFTs.

**Point III**

**PLAINTIFF HAS FAILED TO SHOW THAT
IT HAS A VALID ALTER EGO OR VEIL PIERCING CLAIM**

Plaintiff's Amended Complaint alleges an alter ego/successor/veil piercing claim against Raecorp.  But the allegations of Plaintiff's Amended Complaint do not rise to the level required by Rule E and do not evidence a "fair probability" that the claim is valid.  The Rule B attachment against the property of Raecorp should thus be vacated.

An alter ego or veil piercing claim requires a finding that a corporation was used by another to "perpetrate a fraud" or was "so dominated" and its corporate form "disregarded" such that it primarily transacted the other's  business.  Kirno Hill Co. v. Holt, 618 F.2d 982, 985 (2d Cir. 1980).  See also  Matter of Arbitration between Holborn Oil Trading, Ltd. v. Interpol Bermuda Ltd., 774 F. Supp. 840, 844 (S.D.N.Y. 1991) ("Federal common law in the Second Circuit involves a two pronged test for piercing the corporate veil: the party sought to be charged must have used its alter ego 'to perpetrate a fraud or have so dominated and disregarded [its alter ego's] corporate form' that the alter ego was actually carrying on the controlling party's business instead of its own.")  "Under that standard, ' . . . [a]ctual domination, rather than the opportunity to exercise control, must be shown.'" Ulisses Shipping Co. v. FAL  Shipping Co., 415 F. Supp.2d 318, 323 (quoting De Jesus v. Sears, Roebuck & Co., 87 F.3d 65, 69 (2d Cir. 1996)).

With respect to dominion and control, sole ownership of a corporation is not sufficient, by itself, to pierce the corporate veil.  Kirno Hill Co., 618 F.2d at 985.  "Because a principal purpose for organizing a corporation is to permit its owners to limit their liability, there is a presumption of separateness between a corporation and its owners, which is entitled to substantial weight." American Protein Co. v. AB Volvo, 844 F.2d 56, 60 (2d Cir. 1988).

14

The Second Circuit has listed a number of factors to take into consideration when deciding the merits of an alter ego claim: (1) the absence of the formalities and paraphernalia that are part and parcel of the corporate existence, i.e., issuance of stock, election of directors, keeping of corporate records and the like, (2) inadequate capitalization, (3) whether funds are put in and taken out of the corporation for personal rather than corporate purposes, (4) overlap in ownership, officers, directors, and personnel, (5) common office space, address and telephone numbers of corporate entities, (6) the amount of business discretion displayed by the allegedly dominated corporation, (7) whether the related corporations deal with the dominated corporation at arms length, (8) whether the corporations are treated as independent profit centers, (9) the payment or guarantee of debts of the dominated corporation by other corporations in the group, and (10) whether the corporation in question had property that was used by other of the corporations as if it were its own. Wm. Passalacqua Builders, Inc. v. Resnick Developers South, Inc., 933 F.2d 131, 139 (2d Cir. 1991).

Rule E requires heightened pleading when compared to the Federal Rule's notice pleading. Rule E states in pertinent part: "In actions to which this rule is applicable the complaint shall state the circumstances from which the claim arises with such particularity that the defendant or claimant will be able, without moving for a more definite statement, to commence an investigation of the facts and to frame a responsive pleading." Fed. R. Civ. P., Supp. Adm. Rule E(2)(a). "'This heightened pleading standard is not some pettifogging technicality meant to trap the unwary, but, rather, a legal rule designed to counterbalance the unique and drastic remedies that are available in in rem admiralty proceedings.'" Dolco Investments, Ltd. v. Moonriver Development, Ltd., 486 F.Supp.2d 261 (S.D.N.Y. 2007) quoting P.R. Ports Auth. v. Barge KATY-B, 427 F.3d 93, 105 (1st Cir. 2005).

When applying this standard to the allegations in Plaintiff's Amended Complaint, it is clear that Plaintiff fails to state an alter ego or veil piercing claim with the particularity required.  Nor do the allegations establish that there is a "fair probability" that the claim is true. Plaintiff's allegations at Paragraph 17 of the Amended Complaint are simply conclusory allegations of alter ego/successor/veil piercing liability without any supporting factual basis.  See Dolco Investments, 486 F. Supp.2d at 272. ("Dolco fails to meet this burden because it has not included any factual allegations that GML exercised complete domination over Moonriver.  Other than the conclusory allegation of domination, the Complaint and the Amended Complaint both allege that GML paid Moonriver's debts to Dolco "'from time to time.'")

Similarly, the specific allegations of paragraphs 12 through 16 of the Amended Complaint by themselves do not rise to the level required without evidence of actual domination and control. They merely evidence a relationship between the two corporations.  At best, the factual allegations result in a finding that the corporations are affiliates, which, without more, does not result in a finding of alter ego liability.  A review of the cases shows that, at a minimum, allegations of some financial interdependence and/or commingling of assets is required to state a proper case of alter ego liability. See, e.g., Wajilam Exports (Singapore) Pte. Ltd. v. Atlshipping Ltd., 475 F. Supp. 2d 275 (S.D.N.Y. 2006) (Charter hire and freights commingled and intermingled.); World Reach Shipping, Ltd. v. Industrial Carriers, Inc., 2006 U.S. Dist. LEXIS 83224 (S.D.N.Y. 2006) (Alter ego acted as paying agent or made payments to satisfy dominated corporation's debts.)  Nothing remotely similar is alleged here.

Plaintiff's claim of alter ego/successor/veil piercing liability thus does not meet the requirements of Rule E and the Rule B attachment against Raecorp International should be vacated.

16

<u>**Point IV**</u>

<u>**DEFENDANTS' PROPERTY WAS NOT FOUND WITHIN THE DISTRICT**</u>

A      **The <u>Winter</u> <u>Storm</u> Decision should not be**
       **Relied upon in Support of Rule B Attachments of EFT's**

Rule (B)(1)(a) only permits the attachment of property that belongs to the defendant. <u>See</u> Fed. R.Civ. P., Supp. Adm. Rule B(1)(a); <u>See</u> also <u>Seamar Shipping Corp. v. Kremikovtztrade Ltd., et al.</u>, 461 F.Supp. 2d 222, 223-24 (S.D.N.Y. 2006).  In <u>Winter Storm Shipping Ltd. v. TPI</u>, 310 F.3d 263 (2d Cir. 2002), the Court of Appeals stated that EFT funds in the hands of intermediary banks were subject to Rule B attachments, implicitly holding that the EFTs were defendant's property. <u>Id.</u> at 278. However, the Second Circuit recently called into question the propriety of that decision in <u>Aqui Stoli Shipping Ltd. v. Gardner Smith Pty Ltd.</u>, 460 F.2d 434 (2d Cir. 2006).  There, the Court of Appeals stated:

> The correctness of our decision in <u>Winter Storm</u> seems open to question, especially its reliance on <u>Daccarett</u> . . . to hold that EFTs are property of the beneficiary or sender of an EFT.  Because <u>Daccarett</u> was a forfeiture case, its holding that EFTs are attachable does not answer the more salient question of whose assets they are while in transit.  In the absence of a federal rule, we would normally look to state law, which in this case, would be the New York codification of the Uniform Commercial Code, N.Y.U.C.C. Law §§4-A-502 to 504. Under state law, the EFT could not be attached because EFTs are property of neither the sender nor the beneficiary while present at the intermediary bank.  (Citations omitted)

<u>Aqua Stoli</u>, 460 F.3d at 446, n, 6.

This footnote raises a serious question whether <u>Winter</u> <u>Storm</u>'s implicit holding that EFTs may be considered to be a defendant's property while in transit remains good law.  <u>See</u> <u>Seamar Shipping Corp. v. Kremikovtztrade Ltd., et al.</u>, 461 F.Supp.2d 222, 223-224 (S.D.N.Y. 2006).

Accordingly, this Court should vacate Wilhelmsen's Rule B attachments on the basis that they were not the property of UBS and Raecorp. when they were attached.

> **B        In the alternative, Application of the <u>Winter</u> <u>Storm</u> Decision should be Restricted to the Specific Facts of the <u>Winter</u> <u>Storm</u> Case such that only the Attachment of EFTs from a Defendant to Third Parties should be Permitted**

If the <u>Winter Storm</u> decision remains controlling law in this Circuit, then its application should be narrowly restricted to the specific facts of the <u>Winter Storm</u> case. <u>Seamar Shipping Corp. v. Kremikovtztrade Ltd., et al.</u>, 461 F.Supp.2d  222, 223-24 (S.D.N.Y. 2006). The <u>Seamar Shipping</u> Court refused to expand the application of the <u>Winter Storm</u> decision beyond the specific facts of the <u>Winter Storm</u> case. The <u>Winter Storm</u> EFTs were initiated on behalf of the defendants for the benefit of third parties. <u>Winter Storm</u>, 310 F.3d at 267. The <u>Seamar Shipping</u> Court vacated EFTs initiated by third parties for the benefit of defendants. In so restricting the application of <u>Winter Storm</u>, the <u>Seamar Shipping</u> Court held that the <u>Aqua Stoli</u> Court's comment questioning the correctness of <u>Winter Storm</u> "requires this Court to construe <u>Winter Storm</u> narrowly." <u>Seamar Shipping</u>, 461 F. Supp. 2d at 225.

In this case, the Third Party Transfers, like those in <u>Seamar Shipping</u>, were initiated on behalf of third parties for the benefit of UBS. These EFTs are not governed by the <u>Winter Storm</u> decision. New York state law governs this matter in the absence of a controlling federal admiralty rule. <u>Aqui Stoli Shipping Ltd. v. Gardner Smith Pty Ltd.</u>, 460 F.2d 434, 446, n. 6 (2d Cir. 2006). New York state law dictates that EFTs on behalf of third parties for the benefit of defendants are not property of the defendants and, therefore, cannot be attached. <u>Id.</u> Accordingly, Wilhelmsen's attachments of the Third Party Transfers should be vacated.

<u>Point V</u>

**IF THE PRESENT MOTION IS DENIED, DEFENDANTS
RESPECTFULLY ASK THE COURT TO CERTIFY AN
<u>INTERLOCUTORY APPEAL PURSUANT TO 28 U.S.C. § 1292 (B)</u>**

If this Court declines to dismiss Wilhelmsen's attachments of Raecorp's and UBS' EFTs,

Defendants respectfully request the Court to include in its order a certification pursuant to 28 U.S.C.

§ 1292 (b) for immediate appeal of the issue of whether an EFT may constitute "property" of a

defendant subject to attachment under Rule B. At least two cases pending in this district have already

been certified for interlocutory appeals on this precise issue. <u>See Consub Del. LLC v. Schahin

Engenharia Limitada</u>, 476 F.Supp.2d 305, 314 (S.D.N.Y. 2007); <u>Seamar</u>, 461 F. Supp. 2d at 226.

Section 1292(b) provides that a district court may certify an interlocutory order for appeal if

it is of the opinion that (1) the order "involves a controlling question of law;" (2) "as to which there

is substantial ground for difference of opinion;" and (3) an immediate appeal "may materially

advance the ultimate termination of the litigation." <u>See Klein v. Vision Lab Telecom, Inc.</u>, 399 F.

Supp. 2d 528, 536 (S.D.N.Y. 2005). The determination of whether to certify an interlocutory order

for immediate appeal lies within the discretion of the district court. <u>Id.</u>

**A.    The Issue of whether the EFTs are Defendants' property subject to a Rule B
        attachment is a controlling question of law.**

A question of law is controlling where it includes "issues that would terminate an action if

the district court's order is reversed, substantially affect a large number of cases, or involve a

procedural determination that may importantly affect the conduct of the action." <u>Bay Casino, LLC

v. M/V Royal Empress</u>, No. 98 Civ. 2333 (SJ), 1998 WL 566772 at *2 (E.D.N.Y. Aug. 21, 1998).

This action would be terminated if the attachment were vacated since Plaintiff's position is

that the matter is subject to arbitration in London. Moreover, a Second Circuit determination that

EFTs are not attachable would affect a large number of cases, since a veritable "cottage industry" of Rule B attachments has plagued this district since the Winter Storm decision was handed down. [2] In Consub Del. LLC, the court found that this precise issue was a pure and controlling question of law. Consub Del. LLC, 476 F.Supp.2d at 313. Accordingly, this criteria for obtaining interlocutory certification is satisfied.

**B.    Substantial Ground for Difference of Opinion
        Exists with Respect to the Court's Order**

"The requirement that there be substantial ground for difference of opinion as to the legal issue presented for certification may be satisfied when: (1) there is conflicting authority on the issue, or (2) the issue is particularly difficult and of first impression for the Second Circuit." In Re Lloyd's Am. Trust Fund Litig., No. 96 Civ. 1262 (RWS), 1997 WL 458739, at *5 (S.D.N.Y. Aug. 12, 1997) (citing Klinghoffer v. S.N.C. Achille Lauro, 921 F.2d 21, 25 (2d Cir. 1990)).

In Consub Del. LLC, the court noted that there is, without a doubt, "substantial ground for a difference of opinion . . . because there are conflicting Second Circuit statements on this very issue." Consub Del. LLC, 476 F.Supp.2d at 313. Likewise, the Seamar Court noted that footnote 6 of the Second Circuit's opinion in Aqua Stoli "raises a serious question of whether Winter Storm's implicit holding that EFTs may be considered to be a defendant's property while in transit remains good law . . . The Second Circuit has not spoken with one voice . . . on whether an EFT in the hands of an intermediary bank can be said to be a 'defendant's' property, where the defendant is either the originator or the intended beneficiary of the EFT." Seamar, 461 F.Supp.2d at 224.

---

[2]Jillian L. Benda, Comment, No Calm after the Storm: The Rise of the Rule B Attachment Cottage Industry, 31 Tul.Mar. L.J.95, 107-08 (Winter 2006)(discussing the effects of the Winter Storm decision, including its effect on this particular Court.)

These cases demonstrate the existence of a substantial difference of opinion on the issue. This issue should be decided by the Second Circuit in order to end the ambiguity in this area of law created by the court in <u>Aqua Stoli</u>.

### C.     Appeal of the Order May Materially Advance the Ultimate Termination of the Litigation

Finally, an immediate appeal would materially advance the ultimate termination of this litigation, since vacatur of the attachments would result in the immediate dismissal of this action. In both <u>Seamar Shipping Corp</u>. and <u>Consub Del. LLC</u>, the court concluded that an immediate interlocutory appeal would materially advance the ultimate termination of the litigation. <u>Seamar Shipping Corp</u>. 461 F.Supp.2d at 226; <u>Consub Del. LLC</u>, 476 F.Supp.2d at 314. Thus, UBS respectfully requests that this Court include in its Order a certification pursuant to 28 U.S.C. § 1291(b) for immediate appeal of the issue of whether an EFT may constitute "property" of a defendant subject to attachment under Rule B.

## CONCLUSION

For the foregoing reasons, UBS and Raecorp respectfully request this Court to grant its motion, pursuant to Fed. R. Civ. Pro., Supp. Adm. R. B & E(4)(f), to 1) Vacate the <u>Ex</u> <u>Parte</u> Orders directing the Clerk to issue Process of Maritime Attachment and Garnishment against UBS and Raecorp and the Processes of Maritime Attachment and Garnishment obtained and served by Wilhelmsen thereunder; or, in the alternative, to 2) certify an interlocutory appeal pursuant to 28 U.S.C. § 1292(b) of the Court's order denying this motion.

Dated: Red Bank, NJ
       September 17, 2008

                              Betancourt, Van Hemmen, Greco & Kenyon
                              Attorneys for UBS Provedores Pty Ltd and
                              Raecorp International Pty Ltd

                              By_____/s/_____
                              Jeanne-Marie Van Hemmen(JV 6414)
                              46 Trinity Place
                              New York, NY 10006
                              (212) 297-0050