# EXHIBIT 4

```
                          7979WILC.txt
                                                                    1
      7979wilc
 1    UNITED STATES DISTRICT COURT
 1    SOUTHERN DISTRICT OF NEW YORK
 2    ------------------------------x
 2
 3    WILHELMSEN PREMIER MARINE
 3    FUELS AS,
 4
 4                 Plaintiff,
 5
 5            v.                              07 CV 5798 (CM)
 6
 6    UBS PROVEDORES PTY LTD. AND
 7    RAE CORP. INTERNATIONAL PTY
 7    LTD.,
 8
 8                 Defendants.
 9
 9    ------------------------------x
10                                            New York, N.Y.
10                                            September 7, 2007
11                                            11:27 a.m.
11
12    Before:
12
13                    HON. COLLEEN MCMAHON,
13
14                                        District Judge
14
15                       APPEARANCES
15
16    HOLLAND & KNIGHT
16         Attorney for Plaintiff
17    BY:  MICHAEL J. FREVOLA
17
18    BETANCOURT, VAN HEMMEN, GRECO & KENYON
18         Attorney for Defendants
19    BY:  JEANNE-MARIE D. VAN HEMMEN
19
20
21
22
23
24
25
                    SOUTHERN DISTRICT REPORTERS, P.C.
                            (212) 805-0300
                                                                    2
      7979wilc
 1            (Case called)
 2            THE DEPUTY CLERK:  Your appearances please.
 3            MR. FREVOLA:  Michael Frevola, Holland & Knight, for
 4    the plaintiff.
 5            THE COURT:  Good morning, Mr. Frevola.
 6            MS. VAN HEMMEN:  Jeanne-Marie Van Hemmen from the firm
 7    of Betancourt, Van Hemmen, Greco & Kenyon for defendants UBS
 8    and Rae Corp.
 9            THE COURT:  I don't have any defendant except UBS on
10    this caption.
11            MS. VAN HEMMEN:  Yesterday, your Honor, I was only
12    counsel for UBS.  And then I learned that there had been an
13    amended complaint filed by plaintiffs that added in Rae Corp.
                                Page 1
```

7979WILC.txt

14  Late last night I was appointed by Rae Corp. as well.
15          MR. FREVOLA:  I don't have a copy of it but actually I
16  believe you may have signed it while you were away.
17          THE COURT:  Somebody else signed it while I was away.
18  I see there's an order with a Rae Corp. listed as a defendant.
19  There is an amended complaint.  Okay.
20          MS. VAN HEMMEN:  Your Honor, may I proceed?
21          THE COURT:  Can I talk to plaintiff's counsel first.
22  I read the original complaint.  What is Rae Corp. and why has
23  it been added in?
24          MR. FREVOLA:  Your Honor, it's a member of the same
25  corporate family.  And while originally we didn't include it,
                    SOUTHERN DISTRICT REPORTERS, P.C.
                             (212) 805-0300

3

7979wilc
1  after a few weeks of seeing other indicia, we have common
2  address, common telephone numbers, advertisements which refer
3  to their terms and conditions.  And they say please see Rae
4  Corp.'s and then in parentheses UBS, USS's terms and
5  conditions.  Emails from Mr. Rae come -- for dealing with UBS
6  matters, come from Bill Rae at raecorpinternational.com.
7          In other words, this Rae Corp. entity was set up on
8  March 22 of this year, your Honor, while this dispute was
9  unfolding.  And with all these similarities, it would appear
10 that there's an alter ego issue here playing out.
11         In part, we think that may have been borne out also by
12 something that happened the last week, which I believe my --
13 defendants' counsel is going to mention.  We actually
14 intercepted what we believe is a retainer payment being made to
15 defense counsel the other day in the amount of about ten
16 thousand dollars, just short of ten thousand dollars.  And it
17 was a retainer payment being made by Rae Corp. to counsel.
18         And so those facts we think at least support the alter
19 ego allegations that we have made in the complaint.  That's why
20 we amended as opposed to doing it at first.
21         THE COURT:  Okay.  Thank you.
22         Ms. Van Hemmen.
23         MS. VAN HEMMEN:  Your Honor, as I said I am counsel
24 for UBS and Rae Corp. as of late last night, and I want to make
25 clear, starting out here, that my appearance is for the limited
                    SOUTHERN DISTRICT REPORTERS, P.C.
                             (212) 805-0300

4

7979wilc
1  purpose of objecting to this court's jurisdiction over this
2  matter.  It is purely --
3          THE COURT:  I object to it too, but I'm stuck with
4  this odd maritime jurisprudence.
5          MS. VAN HEMMEN:  I understand that that's the
6  allegation made.  It's our position that there's not maritime
7  jurisdiction over the underlying dispute or over the alter ego
8  claims that were brought against Rae Corp.
9          I just want to make it clear in the record I am aware,
10 as of a telephone conversation I had yesterday with
11 Mr. Frevola, that there was also a scheduling conference in
12 this matter scheduled today.  And I --
13         THE COURT:  That is the conference that's scheduled
14 today.  This is the Rule 16 conference in this case.
15         MS. VAN HEMMEN:  Pardon me?
16         THE COURT:  This is the Rule 16 conference in this
17 case.
18         MS. VAN HEMMEN:  And I understand that.  And I learned
                              Page 2

```
                                 7979WILC.txt
   19   that this conferences was going forward last night at the same
   20   time that I learned other facts that I'm going to explain to
   21   you compelled me to get to the court as soon as possible.  So
   22   it made sense, rather than to adjourn the conference because
   23   there had been no appearance, to use this opportunity to
   24   appear.  But again, I want to make it clear, not pursuant to
   25   that court's order, our position is the court does not have
                        SOUTHERN DISTRICT REPORTERS, P.C.
                                  (212) 805-0300
```

                                                                          5

```
        7979wilc
    1   jurisdiction over the dispute.
    2           THE COURT:  Got it.  You're making that special
    3   appearance, so specially appear.
    4           MS. VAN HEMMEN:  In this case, I represent the
    5   supplier of fuel oil to a number of U.S. Navy affiliated
    6   vessels pursuant to a requirements contract.
    7           THE COURT:  Who is that?
    8           MS. VAN HEMMEN:  That's UBS.
    9           THE COURT:  Is a supplier of fuel to the U.S. Navy
   10   pursuant to various contracts.
   11           MS. VAN HEMMEN:  Wilhhelmsen entered into contracts
   12   with UBS in -- from UBS's perspective, in an effort to comply
   13   with its obligations under the requirement contract to supply
   14   the Navy.
   15           THE COURT:  I've missed a step.  Okay.  UBS supplies
   16   fuels to the Navy pursuant to various requirements contracts.
   17           MS. VAN HEMMEN:  Pursuant to one requirements
   18   contract, UBS has been providing fuel oil to Navy ships.
   19           THE COURT:  Forgive me because I don't know a lot
   20   about naval fuel contracts.  It's a requirements contract in
   21   what sense?
   22           MS. VAN HEMMEN:  In that it was understood that over a
   23   particular period of time UBS would provide bunker fuels to a
   24   number of vessels at a number of ports, all of which remains to
   25   be determined into the future so that they weren't, each one
                        SOUTHERN DISTRICT REPORTERS, P.C.
                                  (212) 805-0300
```

                                                                          6

```
        7979wilc
    1   specifically delineated in a contract in and of themselves.
    2           THE COURT:  So it wasn't the contract for a specific
    3   amount of fuel to a specific vessel.  It was a contract for
    4   fuel to be supplied from time to time as required.
    5           MS. VAN HEMMEN:  Correct.
    6           THE COURT:  Okay.
    7           MS. VAN HEMMEN:  UBS, in order to fulfill its
    8   obligations under the requirements contract went out into the
    9   market to find the bunker fuel.  That's where its relationship
   10   with Wilhhelmsen arose.
   11           Wilhelmsen is a trader of bunker fuels.  That, your
   12   Honor, is a very different function than a supplier of bunker
   13   fuels.
   14           UBS is supplying fuels to ships.  Wilhelmsen is
   15   trading bunker fuels as a commodity.  They are people at desks
   16   with cell phones, with a knowledge of the market around the
   17   world, without an infrastructure to bring about the physical
   18   supply of fuel oil.
   19           However, with that knowledge, they are in a position
   20   to purchase fuel around the world and simultaneously sell it to
   21   people who are contractually obligated to supply ships.  That
   22   is the service that Wilhelmsen offered to UBS under a series of
   23   bunker-related transactions that are at the heart of this
                                    Page 3
```

```
                              7979WILC.txt
24      dispute.
25                It's our position, your Honor, that that is not a
                        SOUTHERN DISTRICT REPORTERS, P.C.
                                 (212) 805-0300
```
                                                                              7
```
        7979wilc
 1      maritime contract.  Instead, that is what's known in the
 2      industry or known in maritime law as a preliminary contract.
 3      Maritime law does not extend to preliminary contracts.
 4                Back to the facts of this case, a whole number of
 5      specific provisions of fuel, Wilhelmsen went to the various
 6      ports, found physical suppliers, and in a simultaneous
 7      transaction bought the fuel from the physical supplier, sold
 8      the fuel to UBS.  UBS thereafter arranged with the physical
 9      supplier for the physical supplier to deliver the fuel to the
10      vessels.
11                That physical supplier in these cases is Sumitomo
12      Corporation.
13                THE COURT:  So when you say Wilhelmsen went to ports,
14      you mean Wilhelmsen placed a telephone call from its trading
15      floor --
16                MS. VAN HEMMEN:  Precisely.
17                THE COURT:  -- in New York or where --
18                MS. VAN HEMMEN:  In Scandinavia; Norway, I believe.
19                THE COURT:  So, it bought fuel to supply to UBS,
20      sold -- immediately resold the fuel to UBS, and Wilhelmsen did
21      not make arrangements for the carrier to the fuel but UBS made
22      arrangements.
23                MS. VAN HEMMEN:  UBS and Sumitomo would then be put in
24      touch with each other and the U.S. Navy, and a three-way
25      exchange of information that resulted in a barge being brought
                        SOUTHERN DISTRICT REPORTERS, P.C.
                                 (212) 805-0300
```
                                                                              8
```
        7979wilc
 1      alongside the Navy ship and the provision of bunkers on the
 2      specific instances occurred.
 3                THE COURT:  What's a bunker?
 4                MS. VAN HEMMEN:  I'm sorry.  A bunker is a word used
 5      interchangeably for marine fuel oil.
 6                MR. FREVOLA:  In the context, your Honor, of it being
 7      consumed by the vessel as opposed to it being carried as cargo.
 8      Bunkers are the ones that are in the fuel tank.
 9                THE COURT:  So, on the Exxon Valdez, the bunkers are
10      the fuel in the fuel tank.  And the stuff that spilled all over
11      the place that was being carried was cargo.
12                MR. FREVOLA:  The term bunkers refers back to, back
13      when they had coal as a mode of propulsion, and the coal
14      bunkers.
15                THE COURT:  Thank you.  I'm learning this maritime
16      stuff much more quickly than I thought I would have to, but I
17      am starting to learn, and it does have its own interesting
18      lingo.
19                MS. VAN HEMMEN:  In this specific case, your Honor,
20      when Wilhelmsen quoted a price to UBS for the bunkers that it
21      was going to sell to trade to it, it included in that price a
22      barge carrying cost, a charge, an upcharge, supposedly equal to
23      the cost of a barge carrying the cargo -- the bunkers, excuse
24      me, alongside the ship, wherever it was going to be delivered.
25                When Wilhelmsen sent its invoices to UBS and
                        SOUTHERN DISTRICT REPORTERS, P.C.
                                 (212) 805-0300
```
                                                                              9

```
                              7979WILC.txt
       7979wilc
  1    thereafter UBS invoiced the U.S. Navy in order to recover the
  2    charge and its profit, the U.S. Navy rejected the invoices
  3    because it found that the bunker charge that was built into the
  4    cost of the bunker fuel was inadequately supported by support
  5    documentation.
  6             UBS has gone back to Wilhelmsen and has requested
  7    supplemental documentation. Wilhelmsen has been unable to
  8    provide it. And to date, the U.S. Navy is refusing to pay
  9    those invoices to Wilhelmsen -- excuse me to UBS. UBS,
 10    therefore, doesn't have the money to pay Wilhelmsen's invoices,
 11    and that's the dispute.
 12             Again, as I mentioned earlier, it's our view that the
 13    underlying contract is a preliminary services contract.
 14             THE COURT: Fine. How fast can you brief it?
 15             MS. VAN HEMMEN: Well, if you will allow me, the plot
 16    thickens. And there's a number of other issues that I need to
 17    address first. And I do think it will make this whole process
 18    quicker if I give you the whole context, if we can go into
 19    that.
 20             THE COURT: Okay.
 21             MS. VAN HEMMEN: In addition, all of the attachments
 22    that have occurred against UBS were the attachments of
 23    electronic fund transfers. I'm not sure if the court is versed
 24    on this issue --
 25             THE COURT: Unfortunately, I'm versed on this issue.
                       SOUTHERN DISTRICT REPORTERS, P.C.
                                (212) 805-0300
                                                                        10
       7979wilc
  1    Believe me, if I had been deciding the case, it would have come
  2    out the other way.
  3             MS. VAN HEMMEN: In our review, your Honor, there is a
  4    good faith basis for a split, given the Aqua Stoli decision.
  5             THE COURT: There is no split. Electronic fund
  6    transfers in this circuit are attachable under Winter Storm,
  7    and Aqua Stoli does not change that. And I read an opinion
  8    into the record two days ago on this.
  9             If you can bring yourself within one of the three Aqua
 10    Stoli exceptions, I'm happy to vacate the attachment;
 11    otherwise, the answer is no. So don't bother going down that
 12    road.
 13             MS. VAN HEMMEN: A third issue, we believe there is no
 14    maritime contract, which is a requirement for the vacation.
 15             THE COURT: Correct. So I want to know how fast we
 16    can decide that.
 17             MS. VAN HEMMEN: A third issue, your Honor, is
 18    arbitration.
 19             As the complaint is drafted, it has sought these
 20    attachments in furtherance of an arbitration in London. It
 21    alleges that there was a contractual undertaking to arbitrate.
 22    In fact, the arbitration provision that's referred to by
 23    Wilhelmsen is an arbitration provision in Sumitomo's terms and
 24    conditions which is the contract that governs the sale between
 25    Wilhelmsen and Sumitomo.
                       SOUTHERN DISTRICT REPORTERS, P.C.
                                (212) 805-0300
                                                                        11
       7979wilc
  1             So there isn't an arbitration provision between -- in
  2    the contract between Wilhelmsen and UBS and that part of the --
  3    that part of the remedy sought by Wilhelmsen just falls apart.
  4             No arbitration has been started. There is not a
                                   Page 5
```

```
                              7979WILC.txt
  5  contractual obligation to arbitrate.  So seizing funds here for
  6  an arbitration that there is no obligation to undertake is
  7  Draconian.
  8            THE COURT:  And has not been undertaken yet.
  9            MS. VAN HEMMEN:  And has not been undertaken yet.
 10            THE COURT:  Unlike all of the other cases that I've
 11  had where there's been a pending arbitration.
 12            MS. VAN HEMMEN:  That's right, your Honor.
 13            Another issue is countersecurity.  One of the
 14  provisions of bunkers involved contaminated fuel that was
 15  subsequently offloaded off the Navy vessel to great expense to
 16  UBS.  The value of that claim is about six hundred thousand.
 17  UBS wants countersecurity for its claim which it's entitled to
 18  under Supplemental Rule F.  However, we make this request
 19  without prejudice to our primary position --
 20            THE COURT:  Well, let's get your primary position
 21  resolved.  Then we can worry about your request under maritime
 22  law for countersecurity.
 23            MS. VAN HEMMEN:  I'm wrapping up but I do have to
 24  explain further what's going on here.
 25            Yesterday I learned -- I had an intention as of
                     SOUTHERN DISTRICT REPORTERS, P.C.
                              (212) 805-0300
                                                                     12
     7979wilc
  1  yesterday, your Honor, to bring all of these issues that I've
  2  just outlined to you before the court in the form of an order
  3  to show cause where it would be fully briefed and you'd be in a
  4  better position to rule on it.
  5            THE COURT:  After I got a response.
  6            MS. VAN HEMMEN:  Well maybe not.
  7            THE COURT:  No.  After I got a response.
  8            I never rule on ultimate issues without getting a
  9  responses.
 10            MS. VAN HEMMEN:  Understood.  Understood.
 11            Mr. Frevola called me yesterday and told me that a
 12  wire transfer from Rae Corp. coming to my office had been
 13  seized.
 14            THE COURT:  Right.
 15            MS. VAN HEMMEN:  And also that they had amended the
 16  complaint and alleged alter ego claims against Rae Corp.
 17            THE COURT:  So, let's -- your problem is that you need
 18  an immediate decision on whether this is a maritime contract.
 19            MS. VAN HEMMEN:  No, your Honor.  My problem is right
 20  now I'm working pro se.
 21            THE COURT:  That's correct.  I hear that.  So you need
 22  an immediate decision.  Your client needs an immediate decision
 23  on whether -- on that issue.
 24            And if you and your client between you can't figure
 25  out a way to get the ten thousand dollar retainer to you
                     SOUTHERN DISTRICT REPORTERS, P.C.
                              (212) 805-0300
                                                                     13
     7979wilc
  1  without going through the City of New York, then you're less
  2  creative than I thought.
  3            MS. VAN HEMMEN:  I think -- well, as I told you, Rae
  4  Corp. has a similar attachment in place.  Rae Corp. is an
  5  affiliated company.  They've alleged alter ego.
  6            THE COURT:  I can't rule on anything without papers.
  7  I'm sorry.  You can stand there and say:  Judge, I don't really
  8  want to work for nothing.  Well put something on a plane to go
  9  over to Europe and pick up a check.
                                 Page 6
```

7979WILC.txt

```
10              MS. VAN HEMMEN:  In light of the Rae Corp. attachment,
11   your Honor, there aren't even alternative sources of funds as
12   of this moment in time, as of last night.
13              THE COURT:  All I can tell you is this.  I am happy to
14   entertain, on an emergency basis, a motion to vacate.  I am
15   happy to put down for a hearing next Friday afternoon, with
16   witnesses, argument, and a decision from the bench, a motion to
17   vacate.  You get me papers by Monday morning.
18              But if you're saying you're not going to get me
19   papers, then I'm sorry.  There's nothing I can do.  I am not
20   prepared to rule on an oral application.  I won't do it.
21              MS. VAN HEMMEN:  I understand, your Honor.  I guess my
22   goal here is two-fold.
23              THE COURT:  And I will not vacate the attachment
24   against Rae Corp. without a written application.
25              No, I'm not going to get you the ten thousand dollars.
                      SOUTHERN DISTRICT REPORTERS, P.C.
                               (212) 805-0300
```

14

```
     7979wilc
1    I appreciate the problem.
2              MS. VAN HEMMEN:  Well, my issue I guess is two-fold.
3    One is in light of the fact that there's a possibility there
4    will be no further funds coming, because the company, as of
5    last night, was in such a state they didn't know that they
6    would be able to.  And it's not a question of creatively
7    getting the money here.  It's a question of cash flow because
8    it has already been in --
9              THE COURT:  If it's a question of cash flow, there's
10   nothing I can do about that.
11             I don't believe that it's impossible for you to get
12   money from Rae Corp.
13             MS. VAN HEMMEN:  Well, sitting here right now, I don't
14   even know the answer one way or the other.
15             THE COURT:  Okay.  Obviously, the easiest way to get
16   money from Rae Corp. is through an electronic funds transfer
17   that would come into your account in New York, but there are
18   other ways to get money from Rae Corp.
19             MS. VAN HEMMEN:  If Rae Corp. has money.
20             THE COURT:  But if Rae Corp. doesn't have money,
21   that's not my problem.
22             MS. VAN HEMMEN:  It isn't, your Honor.  But it does
23   create a due process problem.  The reason Rae Corp. and UBS
24   don't have any money is because of the attachments in place.
25   And therefore -- and a corporation can't come in and do this
                      SOUTHERN DISTRICT REPORTERS, P.C.
                               (212) 805-0300
```

15

```
     7979wilc
1    pro se.  Therefore, they do need counsel.  And if they don't
2    have funds for counsel, then they are not in a position to seek
3    justice in this court.
4              THE COURT:  Then you need to make a presentation to me
5    that's more than standing up saying they don't have money.  I
6    need something under oath from someone telling me:  I am going
7    to be deprived of my due process rights under Maritime Rule B
8    because I don't have any money in the whole world anywhere.  I
9    have no money.  Okay.
10             I can't do it because you stand up and say my client's
11   being deprived.  That's not enough for me.
12             MS. VAN HEMMEN:  Well, I did feel, in light of the
13   developments last night that it was important to come in here
14   and at least make a record to the best of my ability at this
```

Page 7

```
                                   7979WILC.txt
      15      time, based on the work that's already been done.
      16             The ten thousand was not money that was going to be
      17      used to brief these issues, your Honor.  The ten thousand was
      18      already long outstanding and overdue to just analyze the
      19      situation.
      20             THE COURT:  I hear you.  You need to be paid -- you
      21      raise -- now you have raised an interesting issue, a due
      22      process issue that's analogous to the issue that arises in
      23      criminal cases when the government attaches for forfeiture
      24      purposes money belonging to a defendant that was going to be
      25      used to pay counsel.  This is not a criminal context, but I
                             SOUTHERN DISTRICT REPORTERS, P.C.
                                       (212) 805-0300
                                                                           16
              7979wilc
       1      hear your due process argument.
       2             Either your firm can make some new law and enhance its
       3      reputation at some potential financial risk.  Or, you don't
       4      want to handle this matter.
       5             But I cannot make a ruling on an intriguing, novel to
       6      me, due process argument.  I can't get any money for a lawyer.
       7      I can't appear without a lawyer.  I can't appear pro se.  I
       8      can't get money into New York to a lawyer because I have this
       9      attachment.  I have a due process right to vacate the
      10      attachment.
      11             I'm not going to do the research from scratch.  That's
      12      not my job.
      13             MS. VAN HEMMEN:  If I may, your Honor, I understand
      14      the court's position perfectly clearly, but I also feel
      15      compelled to just make a record here this morning, if you'll
      16      just let me proceed so that it has been said on the record, the
      17      position of my client.
      18             I really don't know where this is going.  There's
      19      payoffs in Australia.  And I'm trying to do my best with the
      20      facts in front of me.  So I would just like to say my piece so
      21      that I get to report back I have made the applications that my
      22      client has instructed me.
      23             THE COURT:  You haven't made the applications.  I will
      24      not accept them otherwise than in writing.
      25             These are serious, significant, intriguing issues;
                             SOUTHERN DISTRICT REPORTERS, P.C.
                                       (212) 805-0300
                                                                           17
              7979wilc
       1      complicated issues of law.
       2             You are coming in here making a representation to me,
       3      based on hearsay, not under oath and not of your own personal
       4      knowledge, that your client is unable to retain counsel because
       5      it has no money because of these attachments.
       6             I'm not prepared to accept that.
       7             I'm prepared to accept it if it's made in proper form.
       8             MS. VAN HEMMEN:  Yes, your Honor.
       9             THE COURT:  Okay.  I'm prepared to accept an order to
      10      show cause with an affidavit.  I'm prepared to give you as fast
      11      a hearing as it's humanly possible to give you.
      12             MS. VAN HEMMEN:  Unfortunately, fastness is normally
      13      what I would look for and that is how I was intending to
      14      proceed until last night, until there's resolution of those
      15      issues on fees because they are considerably in arrears and
      16      they need to come up with fees for us to go forward.  If I were
      17      to stand here today and ask you for a fast --
      18             THE COURT:  But they're not considerably in arrears
      19      because of the attachment.
                                         Page 8
```

```
                              7979WILC.txt
20          They are considerably in arrears, you say, because
21   they have no money.
22          MS. VAN HEMMEN:  No.  They were trying to send -- they
23   were trying to send money, which would have brought them up --
24   I was expecting more than the ten, quite frankly.  And it turns
25   out it was just the ten.  The ten would have brought them up to
                    SOUTHERN DISTRICT REPORTERS, P.C.
                              (212) 805-0300
                                                                    18
     7979wilc
 1   their current --
 2          THE COURT:  I hear what your problem is.
 3          MS. VAN HEMMEN:  -- debt.
 4          THE COURT:  I used to be in private practice.  Believe
 5   me.  You have every sympathy.  This is extremely intriguing.
 6   It's very intriguing.
 7          MS. VAN HEMMEN:  Could I suggest one solution that I'd
 8   just like to get on the record?
 9          THE COURT:  Sure.
10          MS. VAN HEMMEN:  This ten thousand dollars that has
11   been seized by Wilhelmsen, they're already secured, last I
12   heard, to the tune of about nine hundred thousand.
13          I'm wondering if it's within the court's equitable
14   powers under admiralty to instruct them to release that ten and
15   to allow another 20 to go forward so that the defendant, for
16   whom they're seeking this remedy, is in a position to appear in
17   court.  And I believe that the court has certain inherent
18   equitable powers as well.
19          THE COURT:  I do have inherent equitable powers.  I
20   understand that I have inherent equitable powers.
21          All you're doing is standing up and telling me --
22   well, let me hear from your opponent.
23          This is, and I will say it on the record, the perfect
24   example of why Winter Storm is a disastrous development in the
25   law.
                    SOUTHERN DISTRICT REPORTERS, P.C.
                              (212) 805-0300
                                                                    19
     7979wilc
 1          MS. VAN HEMMEN:  And on the heels of that --
 2          THE COURT:  In addition to consuming inordinate
 3   amounts of the time of the court in the Southern District of
 4   New York.
 5          MS. VAN HEMMEN:  Your Honor, on the heels of that, I
 6   would like to start laying the foundation in the event that we
 7   are able to stay on as counsel, and I heard your view toward
 8   the EFTs which --
 9          THE COURT:  But the first thing we're going to do, if
10   you stay on as counsel, is decide if this is a maritime
11   contract; and if it's not, I'm going to vacate the attachment
12   and that will be the end of it.  I will not go out of my way to
13   reach out for some other issue.
14          I can't reverse the Second Circuit on Winter Storm.
15   Former Chief Judge Walker questioned Winter Storm in a footnote
16   in Aqua Stoli.  But it's good law, and I will follow it.  I
17   will not overturn it until such time as the Second Circuit has
18   done so.
19          MS. VAN HEMMEN:  Should we be put in funds and proceed
20   as counsel, and should we make a determination that this is a
21   maritime contract, we will be petitioning the court for an
22   interlocutory appeal, which I understand requires exceptional
23   circumstances.  So I just mention to the court that these facts
24   here today, I hope, at that time, if and when it develops, will
                                Page 9
```

7979WILC.txt

25  be borne in mind when it comes to the exceptional circumstances

7979wilc

1   because we have two ongoing business entities that really are
2   on their knees and one in the process of considering winding up
3   as of last night.
4              THE COURT:  Yes.  Is there an arbitration pending
5   anywhere?
6              MR. FREVOLA:  There is not, your Honor, and that's
7   because there was a --
8              THE COURT:  Is there an arbitration clause between you
9   and UBS or you and Rae Corp?
10             MR. FREVOLA:  I believe there is, your Honor.
11             THE COURT:  Where.  Show it to me.  Physically.  This
12  minute.  Give it to me.  Put it in my hand.  The arbitration
13  clause.
14             MR. FREVOLA:  I don't have a copy of the verified
15  complaint.
16             THE COURT:  Well, excuse me.  You brought a verified
17  complaint in this court and are seeking an attachment in aid of
18  an arbitration that doesn't exist and there may not be an
19  arbitration clause.  You show me the arbitration clause right
20  now.
21             MR. FREVOLA:  May I approach, your Honor?
22             THE COURT:  Yes.  Please announce what the provision
23  is.
24             MR. FREVOLA:  Provisions 14.8 and 14.9, your Honor, of
25  the Sumitomo general terms and conditions.

7979wilc

1              THE COURT:  You're not Sumitomo.  You're not Sumitomo.
2              MR. FREVOLA:  Your Honor -- I'd have to go back to
3   look.
4              THE COURT:  I said do you have an arbitration clause
5   in your contract with UBS.
6              MR. FREVOLA:  The correspondence between the parties,
7   your Honor, incorporated the Sumitomo general terms and
8   conditions.
9              THE COURT:  Where?  Show me.
10             MR. FREVOLA:  I don't have a copy of the
11  correspondence with me.
12             THE COURT:  What are you doing in court without your
13  papers?  What are you doing in court without your papers?
14  That's a contract between Sumitomo and somebody else.
15             MR. FREVOLA:  Again, your Honor, it's my understanding
16  that these terms and conditions were sent to UBS and that it
17  said it will incorporate these terms, including the arbitration
18  clause.  And there is ample case law that deals with the issue
19  of incorporation of an arbitration clause by reference between
20  the parties.
21             THE COURT:  Yeah, but you haven't shown me anything
22  that incorporates it by reference between the parties.
23             MR. FREVOLA:  You're right, your Honor, I haven't.  I
24  should have brought that paper with me.  I regret that.  I
25  thought this was just going to be a scheduling conference, your

7979wilc

```
                              7979WILC.txt
 1   Honor.  I didn't know any application was going to be made
 2   today.
 3              Even if there was not an arbitration clause, your
 4   Honor, and there -- it's our position there is.
 5              Right now the reason why arbitration hasn't gone
 6   forward in London is because there is what's known as a
 7   statutory demand which has been made in Australia on UBS.  And
 8   what a statutory demand is, is a procedural device under
 9   Australian law which is a precursor towards putting someone
10   into receivership.  And because there was a bankruptcy
11   proceeding in Australia, it would raise issues as to whether
12   arbitration would go forward in London.  That's why there
13   hasn't been an arbitration yet commenced in London.
14              THE COURT:  So they are in financial distress.
15              MR. FREVOLA:  I don't think there's any disagreement
16   on that, your Honor.
17              And if there wasn't an arbitration clause, your Honor,
18   this would be just a general purpose, garden variety maritime
19   attachment, or just similar to a Rule C arrest or Rule B
20   attachment of cargo.
21              THE COURT:  Except that there's a dispute about
22   whether this is or is not a maritime -- the contract between
23   you and UBS is a maritime contract.
24              MR. FREVOLA:  And I believe, your Honor, the U.S.
25   Supreme Court in Exxon v. Central Gulf Lines back in the
                       SOUTHERN DISTRICT REPORTERS, P.C.
                                (212) 805-0300
```

23

```
     7979wilc
 1   mid '90s answered this question.  And we responded to and be an
 2   opponent in the Central District of California in a case back
 3   in May on this very issue, where it was -- in this situation
 4   the fuel had not even been provided to the vessel and
 5   nevertheless it was still a maritime contract.
 6              In this context, your Honor, every one of these
 7   claims, fuel was provided to the vessel.
 8              There is also an equitable doctrine dealing with a
 9   person stepping into the shoes of the provider if they pay that
10   provider.  That doctrine may also apply to make it a maritime
11   contract.
12              I don't think we have to go that far.  I think Exxon
13   v. Central Gulf Lines -- I think it's right on point.
14              Plus, there was a requirements contract where there
15   are people being retained around the world to do this and
16   Waterman Steamship Company wound up getting a supplier in
17   Jeddah, Saudi Arabia to do this very thing.  It was a maritime
18   contract.
19              The Supreme Court said this contract is a contract if
20   it was done directly by the supplier.  It cannot not be a
21   maritime contract just because agents somewhere else did it for
22   them.  And that, your Honor, would be our argument in terms of
23   the preliminary services doctrine.
24              I'm trying to take a look to see anything else.
25              I believe those are the issues.
                       SOUTHERN DISTRICT REPORTERS, P.C.
                                (212) 805-0300
```

24

```
     7979wilc
 1              THE COURT:  Were you the agent for the supplier?  I
 2   thought you were the agent for the buyer.
 3              MR. FREVOLA:  No, your Honor.  We are the agent for
 4   the supplier.
 5              THE COURT:  You had a contract with Sumitomo, not with
                                  Page 11
```

```
                              7979WILC.txt
     6    UBS?  You have no contract --
     7            MR. FREVOLA:  Both of them.  We were in between.
     8            As I understand it, you have UBS we were then tasked
     9    to go out and get it --
    10            THE COURT:  Excuse me.  Wait.  You had a contract with
    11    UBS, who tasked you to go out and get something.  So UBS hired
    12    you as its agent to go out and buy oil for it, which you did,
    13    from a supplier, from somebody who had oil.
    14            MR. FREVOLA:  To supply --
    15            THE COURT:  You weren't Sumitomo's agent.  You were
    16    the broker.  You were the buyer's broker.
    17            MR. FREVOLA:  No, your Honor.  We were hired to wind
    18    up, procure bunkers for specific vessels.  And we wound up by
    19    making it possible so that vessel was supplied.
    20            If you look at Exxon v. Central Gulf Lines, your
    21    Honor, it covers this.
    22            THE COURT:  What's the citation on that?
    23            MR. FREVOLA:  I don't have the citation on that.
    24            MS. VAN HEMMEN:  I might even have the case, and it's
    25    clearly distinguishable.
                       SOUTHERN DISTRICT REPORTERS, P.C.
                                (212) 805-0300
                                                                          25
          7979wilc
     1            May I, your Honor.
     2            Your Honor, may I comment on that?
     3            THE COURT:  No.  Let him finish.
     4            MR. FREVOLA:  I believe that I've answered the
     5    outstanding issues in terms of what was been presented,
     6    obviously, in terms of briefing --
     7            THE COURT:  No, you haven't because there's a due
     8    process -- there's an argument that the Rule B due process
     9    rights of UBS are being violated by your attachment of the
    10    funds that were being sent to pay a lawyer to come into court
    11    and respond to this.
    12            We agree that UBS has a due process right to move to
    13    vacate this attachment.  That's the only reason that maritime
    14    attachment is constitutional, right?
    15            MR. FREVOLA:  Agreed, your Honor.
    16            THE COURT:  And we agree that in the State of New
    17    York, state and federal courts, a corporation can only appear
    18    by counsel, right?
    19            MR. FREVOLA:  Yes, your Honor.
    20            THE COURT:  And we agree, do we not, that lawyers have
    21    a right to be paid?
    22            MR. FREVOLA:  Yes, your Honor, I've been --
    23            THE COURT:  Would Holland & Knight go on record as
    24    saying that lawyers have a right to be paid?
    25            MR. FREVOLA:  Yes, your Honor.
                       SOUTHERN DISTRICT REPORTERS, P.C.
                                (212) 805-0300
                                                                          26
          7979wilc
     1            And your Honor, we have been in the same position as
     2    Ms. Van Hemmen is right now, and I understand it, and I
     3    actually, your Honor, in terms of -- if there's a potential to
     4    do it, we tend to let these go if -- we make a recommendation
     5    to let them go if they can be let go, in this certain context.
     6            THE COURT:  What do you mean, we make the
     7    recommendation to let what go?
     8            MR. FREVOLA:  If the client, depending on the
     9    situation between the parties, depending on how large the debt
    10    is, how acrimonious the dispute is, we tend to say that perhaps
                                    Page 12
```

```
                              7979WILC.txt
    11      it makes sense to allow the retainer to go through, as a
    12      courtesy, because we've been on the other side of this, your
    13      Honor.  I understand it.
    14              I have posed that question to my client.
    15              THE COURT:  Has the due process issue ever been
    16      litigated?
    17              MR. FREVOLA:  I am unaware of that, your Honor.  I
    18      don't think so.
    19              THE COURT:  Because it's a very intriguing issue.
    20              MR. FREVOLA:  These things tend to raise very
    21      interesting issues, your Honor, and they are always new.
    22              THE COURT:  Very intriguing issue.
    23              MR. FREVOLA:  Your Honor, would it make sense for
    24      me -- I have not gotten an answer back from my client one way
    25      or another on this.  Would it make sense for me to ask my
                         SOUTHERN DISTRICT REPORTERS, P.C.
                                   (212) 805-0300
```

27

```
            7979wilc
     1      client about allowing the retainer to come through?
     2              THE COURT:  It would certainly make a lot of sense for
     3      you do that.
     4              MR. FREVOLA:  I will do that today, your Honor.
     5              THE COURT:  Because if you don't, it seems to me that
     6      I'm going to have to decide whether the due process rights of
     7      UBS are being violated by your clients' taking or stealing,
     8      depending on how you look at it, their lawyer's money and
     9      thereby preventing them, by the use of this -- that would be
    10      constitutionally infirm but for their right to come into court,
    11      literally preventing them from coming into court.
    12              MR. FREVOLA:  The only other thing in terms of, for
    13      scheduling, I am about to purchase tickets to go to Norway to,
    14      among other people, visit this particular client for not this
    15      coming week but the week following.
    16              THE COURT:  Yes, but you have a very large firm.
    17              MR. FREVOLA:  Yes, your Honor.
    18              THE COURT:  And I swore to God when I was at Paul,
    19      Weiss that I would never say that if I ever became a judge, and
    20      I am foresworn.
    21              MR. FREVOLA:  Thank you, your Honor.
    22              THE COURT:  But you're taking their money without any
    23      adjudication of the dispute between you and, indeed, prior to
    24      the time when any court or arbitral panel, be it a court or
    25      arbitral panel that would have jurisdiction, is seized of the
                         SOUTHERN DISTRICT REPORTERS, P.C.
                                   (212) 805-0300
```

28

```
            7979wilc
     1      dispute between you for four-and-a-half million dollars.  So no
     2      progress is being made to adjudicate that.  And I just want you
     3      to understand that you should go to Norway.  Just make sure
     4      somebody else in your firm is covering the file because we will
     5      move very, very expeditiously.
     6              You need to get back to me by the first thing Monday
     7      morning, and certainly get back to your opponent -- if she's,
     8      in fact, your opponent -- with a word on whether the retainer
     9      money is going to come -- be allowed to go through.
    10              MR. FREVOLA:  Yes, your Honor.
    11              THE COURT:  If it's not, then because you are holding
    12      the money, you have 48 hours or until noon on Wednesday to
    13      serve me with a brief explaining why you have not violated
    14      UBS's due process rights by taking the money that's intended
    15      for them to appear by counsel, which is the only way that they
                                     Page 13
```

```
                              7979WILC.txt
16      can appear, for the purpose of vindicating their constitutional
17      right to vacate the Rule B attachment. Or you could concede
18      that their due process rights are thereby violated. That may
19      give you some leverage with your client who might prefer not to
20      have an opinion on this issue floating around out there.
21               Okay. Now, let's make an assumption. Let's make an
22      assumption that your firm gets a little money. How quickly can
23      you get your order to show cause before me?
24               MS. VAN HEMMEN: How about the following Monday, your
25      Honor.
                        SOUTHERN DISTRICT REPORTERS, P.C.
                                 (212) 805-0300
                                                                         29
        7979wilc
 1               THE COURT: Fine. So get the people ready at your
 2      firm -- so we're talking Monday the 18th. I have a trial
 3      starting Monday the 4th. So I'm going to want to do a hearing
 4      on Friday. I have conferences all morning. So, it will be
 5      Friday afternoon. I'll need responsive papers by Thursday at
 6      noon.
 7               Everybody knows what the issues are. Is there a
 8      maritime contract? Is there any underlying basis for an
 9      attachment? I know that an arbitration does not need to have
10      been commenced. I know that. I've read that in the cases, but
11      that really isn't the issue.
12               And let's get all these issues decided. It seems to
13      me that it's a pretty finite amount of work for each of us to
14      do to get these issues decided.
15               Now, the alter ego issue is somewhat more complicated.
16               MS. VAN HEMMEN: And I was going to raise that. Our
17      view is they haven't made a prima facie case, and we do intend
18      to brief that as well.
19               THE COURT: Fine. And I'm prepared to listen to --
20      it's your burden, of course, and I'm prepared to listen to
21      witnesses on that.
22               MS. VAN HEMMEN: Your Honor, I understand your issue
23      on the EFTs. However, this ultimately could be going up on
24      appeal and so it's an issue we would want to preserve.
25               THE COURT: Fine. Preserve -- write one sentence in.
                        SOUTHERN DISTRICT REPORTERS, P.C.
                                 (212) 805-0300
                                                                         30
        7979wilc
 1      Winter Storm should be reversed.
 2               And I won't reverse it. Okay. But then you can take
 3      it up.
 4               And if -- and of course the panel of the Second
 5      Circuit won't reverse it, but if the panel wants to see if they
 6      want to en banc the issue --
 7               MS. VAN HEMMEN: Thank you, your Honor.
 8               THE COURT: But we all understand that my hands are
 9      tied.
10               MS. VAN HEMMEN: Understood.
11               THE COURT: When they have these hearings in front of
12      the Senate, some senator always says: Now, you understand that
13      you are not a lone ranger. You are bound by the decision --
14      what court are you bound by the decisions of? The Supreme
15      Court and the United States Court of Appeals for the Second
16      Circuit. We all did it.
17               I'll hear from you Monday morning.
18               MS. VAN HEMMEN: Thank you, your Honor.
19               MR. FREVOLA: Thank you, your Honor.
20               THE DEPUTY CLERK: Hearing the 28th in the afternoon
                                    Page 14
```

```
                              7979WILC.txt
 21   did we say?
 22             THE COURT:  That's what we said.
 23             THE DEPUTY CLERK:  Two o'clock.
 24             THE COURT:  Unless, put it on for the following
 25   Monday.  I don't know what you have on the following Monday.
                      SOUTHERN DISTRICT REPORTERS, P.C.
                                (212) 805-0300
                                                                       31
      7979wilc
  1             THE DEPUTY CLERK:  We could put it on --
  2             THE COURT:  We can't because we have a trial on the
  3   24th.
  4             Put it on for Monday.
  5             THE DEPUTY CLERK:  Monday at 10:00.  That's October 1.
  6             MR. FREVOLA:  That would be the hearing?
  7             THE DEPUTY CLERK:  The hearing.  10:00.  October 1.
  8             MR. FREVOLA:  And the briefing would be September 17
  9   for the initial moving; September 20 for our responsive.
 10             THE COURT:  I was talking about doing the hearing on
 11   Friday the 21st.
 12             THE DEPUTY CLERK:  Then it's all right.
 13             THE COURT:  Let's put dates on all this.
 14             When are you going to have your order to show cause to
 15   me?
 16             MS. VAN HEMMEN:  A week from Monday, your Honor.
 17             THE COURT:  So it's Monday the 24th -- no, it's
 18   Monday the 17th.  We're talking about a hearing on Friday the
 19   21st, is what I thought we were talking about.  Now Friday the
 20   21st is Yom Kippur, and there's stuff on.
 21             (Pause)
 22             THE COURT:  We're going to put it on for the 21st and
 23   we'll start the trial on the 22nd -- I'm sorry, Monday the
 24   24th.  We'll start the trial on Tuesday.
 25             THE DEPUTY CLERK:  9:30 on the 24th.  (Adjourned)
                      SOUTHERN DISTRICT REPORTERS, P.C.
                                (212) 805-0300


                                 Page 15
```