BETANCOURT, VAN HEMMEN, GRECO & KENYON
Counsel for Defendants
UBS PROVEDORES AND RAECORP INT'L LTD
46 Trinity Place,
New York, NY 10006
(212) 297-0050
Jeanne-Marie D.Van Hemmen(JV 6414)
Todd P.Kenyon (TK 7654)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
———————————————————————X

WILHELMSEN PREMIER MARINE FUELS AS

       Plaintiff,

  against

UBS PROVEDORES PTY LTD. AND
RAECORP INTERNATIONAL PTY LTD.,

       Defendants
---------------------------------------------------------------X

07 Civ. 5798 (CM)

**DEFENDANTS' REPLY MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION FOR AN ORDER VACATING THE <u>EX PARTE</u> ORDERS FOR PROCESS OF MARITIME ATTACHMENT AND GARNISHMENT PURSUANT TO SUPP. ADM. RULE B, OR, IN THE ALTERNATIVE, CERTIFYING THE ISSUE OF WHETHER DEFENDANTS HAVE PROPERTY SUBJECT TO ATTACHMENT IN THE DISTRICT FOR INTERLOCUTORY APPEAL PURSUANT TO 28 U.S.C. § 1292**

**Preliminary Statement**

This memorandum of law is submitted in reply to Plaintiff Wilhelmsen's Opposition to Defendants' Motion to Vacate Plaintiff's Rule B attachment or in the alternative certify the issue of whether defendants' have property subject to attachment in the district pursuant to 28 U.S.C. Section 1292.

**Argument**

**MIDDLEMAN'S CONTRACT TO SELL BUNKERS TO ANOTHER MIDDLEMAN DOES NOT SUPPORT ADMIRALTY JURISDICTION FOR A RULE B ATTACHMENT, NOR DOES IT GIVE RISE TO A MARITIME LIEN NECESSARY FOR A RULE C IN REM ARREST**

Wilhelmsen cites a number of cases dealing with the issue of whether bunker brokers are entitled to maritime liens on vessels onto which their marine fuel oil is loaded pursuant to the Federal Maritime Lien Act, 46 U.S.C.@ 30101 et seq. in its Memorandum of Law in Opposition to UBS' motion to vacate, on pages 9 - 14 ("Wilhelmsen MOL"). The cases do not deal directly with the issue of whether the underlying contracts are maritime. Instead, they analyze whether the bunker broker is entitled to a maritime lien given the statutory requirements of the FMLA.

Those cases, nevertheless, support UBS' position herein. They establish that a claimant's direct relationship to either the vessel operator, or the vessel, is required for the claimant to have the benefit of those unique maritime remedies intended to facilitate international trade. In those cases where the bunker broker was granted a maritime lien on the vessel, it had contracted with the vessel's owner or charterer directly. In those cases where the bunker broker was denied a maritime lien, it was because the bunker broker had no relationship to the vessel operator.

In Galehead, Inc. v. M/V Anglia, 183 F.3d 1242 (11th Cir. 1999), the court granted maritime liens to the entity that contracted directly with the ship's charterer, Polygon Energy Services, Inc. ("Polygon"). The Court denied a maritime lien to the middleman, Establissment Asamar, Ltd. ("Asamar"), on the basis that Asamar did not furnish bunkers on the order of the vessel i.e did not contract directly with the ship operator. Id. at 1245.

In Tramp Oil & Marine, Ltd. v. M/V Mermaid I, 805 F.2d 42 (1st Cir. 1986), the court denied the middleman's, Tramp's, maritime lien on the vessel stating, "[i]n this case, no relationship existed between Tramp and the vessel and neither the vessel owner nor the charterer ever knew of Tramp

. . ." Id. at 45.

The court granted a maritime lien in A/S Dan-Bunkering, Ltd. v. The M/V Zamet, 945 F. Supp. 1576 (S.D.Ga. 1996). In that case, Dan Bunkering contracted directly with the shipowner. The Dan Bunkering Court distinguished the Tramp Oil decision thus: "Tramp Oil is inapposite to this case because [Dan Bunkering] is not an intermediary supplier or unknown to Zamet, but dealt directly with the charterer." Id. at 1578-79. (Plaintiff's Memorandum of Law mistakenly describes Dan Bunkering as an "intermediary supplier", Wilhelmsen's MOL at P. 12, although the court specifically stated Dan Bunkering was not. Id.)

The Court's decision in Exxon v. Central Gulf Lines, 500 U.S. 603 (S.D.N.Y. 1991) established that contractors that contract with vessel operators to supply marine fuel oil to vessels have maritime contracts even when the contractors use subcontractors to perform. The Dan Bunkering and Galehead decisions determined those same contracts give rise to maritime liens on the vessels to which the marine fuel oil is supplied.

In contrast, the Tramp Oil and Galehead decisions establish that middlemen who neither contract with vessel owners nor physically supply vessels, do not get maritime liens under the FMLA. Those holdings support a finding herein that such contracts are not maritime contracts either.

Wilhelmsen was a middleman like the intermediary suppliers in Tramp Oil and Galehead. Like the intermediary suppliers in Tramp Oil and Galehead, Wilhelmsen does not have a lien under the FMLA on the U.S.Navy vessels. Nor is its contract with UBS maritime. All of the bunker cases relied upon by Wilhelmsen support UBS' position herein. Mere middlemen, who neither contract with vessel owners nor physically supply ships, do not have maritime contracts and, therefore, are not entitled to this Court's admiralty jurisdiction.

Wilhelmsen relies on Trans-Tec as "another example of a federal court's exercise of admiralty jurisdiction with respect to a dispute arising from a factually similar transaction." Wilhelmsen argues that the Trans Tec Court "confirms admiralty jurisdiction throughout the Trans-Tec decision." Wilhelmsen MOL at p. 13. Wilhelmsen's analysis is facile and entirely inaccurate. While both disputes arise from bunker brokering, their respective jurisdictional bases in U.S. federal court have no bearing on each other. Trans-Tec contracted directly with the vessel's charterer. Trans-Tec Asia v. M/V Harmony Container, 435 F.2d 1015, 1017 (C.D.Ca. 2005). Additionally, Trans-Tec arrested the vessel in rem and sued the vessel owner in personam on unjust enrichment claims. Id. Accordingly, the Court's jurisdiction was not premised on an allegation that a contract between two middlemen to supply marine fuel oil was a maritime contract.

The Trans-Tec Court ultimately refused to extend the benefits of the FMLA to Trans-Tec, even though Trans Tec had contracted directly with the vessel's charterer, on the basis that the FMLA does not apply to foreign suppliers to foreign vessels in foreign ports. Trans-Tec Asia v. M/V Harmony Container, 437 F. Supp.2d 1124, 1135-36 (C.D.Ca. 2006). This FMLA issue has no bearing on the issue before this court.

Wilhelmsen cites one Rule B Attachment case in connection with the maritime contract issue. Gulf Marine & Indus. Supplies, Inc. v. New Filipino Maritime Agencies, 2001 U.S. Dist. LEXIS 4475 (E.D.La. 2001). In Gulf Marine, the supplier of necessaries did not contract with the vessel operator. However, it did physically deliver the necessaries to the vessel. Accordingly, its contract with a middleman was held to be maritime in nature. This is not inconsistent with UBS' position. Sumitomo's undertaking to physically supply the US Navy is maritime and would support admiralty jurisdiction. Wilhelmsen's undertakings to UBS, however, are not maritime and do not support maritime jurisdiction.

## **CONCLUSION**

For the foregoing reasons, UBS and Raecorp respectfully request this Court to grant its motion, pursuant to Fed. R. Civ. Pro., Supp. Adm. R. B & E(4)(f), to 1) Vacate the Ex Parte Orders directing the Clerk to issue Process of Maritime Attachment and Garnishment against UBS and Raecorp and the Processes of Maritime Attachment and Garnishment obtained and served by Wilhelmsen thereunder; or, in the alternative, to 2) certify an interlocutory appeal pursuant to 28 U.S.C. § 1292(b) of the Court's order denying this motion.

Dated: Red Bank, NJ
September 22, 2007

Betancourt, Van Hemmen, Greco & Kenyon
Attorneys for UBS Provedores Pty Ltd and
Raecorp International Pty Ltd

By_____/s/_____
Jeanne-Marie Van Hemmen(JV 6414)
46 Trinity Place
New York, NY 10006
(212) 297-0050