# EXHIBIT 3

Case 07-cv-05098-CM-BP Document 27-5 Filed 09/28/2007 Page 1 of 13

## GENERAL TERMS AND CONDITIONS OF SALE

### 1. GENERAL

1.1 All sales by Sumitomo Corporation Europe Limited ("Seller") shall exclusively be governed by the terms and conditions specified herein (the "Conditions"). Any deviating conditions or confirmations of the person, firm or company ("Buyer") who purchases any goods in any contract between Seller and Buyer, including without limitation any terms or conditions endorsed on, delivered with or contained in Buyer's confirmation of order, specification or other document shall be applicable only, if and in so far as Seller has expressly consented to them in writing. Seller's mere silence with respect to such deviating conditions or confirmations shall not be construed as acknowledgment or consent. Seller hereby expressly objects to all such deviating conditions or confirmations of Buyer.

1.2 Buyer acknowledges that it has not relied on any statement, promise or representation made or given by or on behalf of Seller which is not set out in the Contract (as defined below).

### 2. DELIVERY

2.1 The obligation of Seller to deliver the goods specified on the face of the sale and purchase agreement between Seller and Buyer (the "Goods") (the "Contract") by the time or within the period stipulated on the face of the Contract shall be subject to the availability of necessary space of a vessel, air craft, truck, railway or other means of transportation agreed by the parties hereunder.

2.2 If the Contract is based on a FOB, FAS or any other terms under which Buyer shall secure necessary vessel's space, Buyer shall do so on the basis of berth terms.

2.3 In case Buyer shall contract for the carriage of the Goods, Buyer shall give Seller due delivery instructions within a reasonable time prior to delivery, so as to enable Seller to have the Goods ready for delivery. Failure of Buyer to give such instructions in time is a breach of the Contract and Seller, for the account and at the risk of Buyer, may, at its discretion either (i) contract for the carriage of the Goods and make delivery, (ii) arrange for the storage and/or dispose of the Goods or (iii) terminate the Contract or any part thereof, without prejudice to any other rights and remedies Seller may have.

2.4 In case of delivery in instalments, any delay or failure in delivery of one lot shall not be deemed a breach of the Contract giving rise to a right of Buyer to terminate this contract or refuse to accept the performance with respect to the other lots. The risk of loss or damages of the Goods shall pass to Buyer in accordance with the Incoterms of the latest edition ("Incoterms") as used on the face of the Contract in connection with the delivery terms. If no Incoterm is included in the Contract, the risk of loss or damage shall pass to Buyer when the Goods are handed over to the first carrier.

### 3. PAYMENT

3.1 If payment for the Goods shall be made by a letter of credit, Buyer shall, unless otherwise specified, establish in favour of Seller an irrevocable letter of credit on terms satisfactory to Seller negotiable on sight draft through a prime bank of good international repute, which shall be received by Seller immediately after conclusion of the Contract. The letter of credit shall remain valid for at least fifteen (15) days after the latest time of delivery. If the letter of credit is dishonoured, Buyer shall pay Seller directly and unconditionally.

3.2 Buyer shall pay the price specified on the face of the Contract without set-off, counterclaim, recoupment or other similar rights which Buyer may have against Seller, which rights shall be exercised in separate proceedings between Buyer and Seller. Unless otherwise specified, payment of the price for the Goods is due in pounds sterling within 30 days of Seller issuing an invoice for the Goods.

3.3 If Buyer fails to pay for the Goods in accordance with the Contract, Buyer shall be liable to pay interest to Seller on such overdue sum from the due date for payment at the annual rate of 3 per cent above the base lending rate from time to time of the Bank of England, accruing on a daily basis until payment is made, whether before or after any judgement. Seller reserves the right to claim interest under the Late Payment of Commercial Debts (Interest) Act 1998 (as amended from time to time).

3.4 If Buyer's failure to make payment or otherwise perform its obligations hereunder is reasonably anticipated, Seller may demand Buyer to provide, within a reasonable time, adequate assurance satisfactory to Seller of the due performance of the Contract, and withhold delivery of the undelivered Goods until such assurance is given.

### 4. INCREASED COST

Any new, additional or increased freight rates, surcharges (bunker, currency, congestion or other surcharges), taxes, customs duties, export or import surcharges or other governmental charges, or insurance premiums, which may be incurred by Seller with respect to the Goods after the conclusion of the Contract, shall be for the account of Buyer and shall be reimbursed to Seller by Buyer within a reasonable time on demand.

### 5. TAXES AND DUTIES

All taxes, duties, costs and charges attributable to the laws of any national or local government or agency thereof that may be assessed in the country of destination stipulated on the face of the Contract or the country of Buyer on any transactions herein contained, including but not limited to import duty and surcharge, shall be borne and paid by Buyer.

### 6. INSPECTION OF GOODS AND WARRANTY

6.1 UNLESS EXPRESSLY STIPULATED ON THE FACE OF THIS CONTRACT, SELLER MAKES NO WARRANTY OR CONDITION, EXPRESSLY OR IMPLIEDLY, AS TO THE DESCRIPTION OR QUALITY OF THE GOODS OR THEIR SUITABILITY FOR ANY PARTICULAR PURPOSE OF THEIR USE OR MERCHANTABILITY OR AS TO THEIR CORRESPONDENCE WITH SAMPLE. IF ANY WARRANTY EXISTS, SELLER'S LIABILITY SHALL BE LIMITED TO REPLACEMENT OR REPAIR OF THE DEFECTIVE GOODS OR TO REFUND OF THE PRICE OF THE GOODS, AT SELLER'S OPTION.

6.2 Buyer shall promptly inspect the Goods and notify Seller of defects in any of the Goods within thirty (30) days after the arrival of the Goods at the place of destination as stipulated on the face of the Contract. Buyer's notification of defects shall contain full particulars of the nature of the defect. If Buyer fails to give requisite notice, the Goods shall be conclusively presumed to be free from any defects and Buyer shall be deemed to have accepted the Goods accordingly.

### 7. WARNINGS, LABELS, INSTRUCTIONS, ETC.

Where the Goods are supplied with any warnings, labels, instructions, stickers, manuals or other information (together referred to as "Instructions") whether printed or otherwise appearing on or affixed to the Goods (or any part thereof) or any packaging in which the Goods are supplied or otherwise supplied separately with the Goods and whether in the form of writing, pictures, drawings, diagrams, carriage, tolerances or other treatment of the Goods, Buyer shall ensure that all such Instructions are not lost or damaged in any way while the Goods are in its possession or under its control and that they are supplied with the Goods when Buyer releases them from its possession or control.

### 8. INDEMNITY ETC.

Buyer shall indemnify Seller on demand against all actions, suits, claims, demands, losses, charges, costs and expenses which Seller may suffer or incur in connection with any claim by any third party alleging facts which if established would evidence a breach of the undertakings or representations on the part of Buyer contained in Clauses 6 and 7.

### 9. FORCE MAJEURE

If the performance by Seller of its obligations hereunder is directly or indirectly affected or prevented by Acts of God, fire, explosion or other catastrophes, epidemic, quarantine restriction, perils of the sea, war declared or not or threat of the same, civil commotion, blockade, arrest or restraint of government, rulers or people, strike, lockout, sabotage or other labour dispute, accident, breakdown or unavailability of whole or part of machinery, plant, transportation or loading facility, governmental request, guidance, order or regulation, severe shortage of oil, gas, electricity or materials, bankruptcy or insolvency or reorganisation of the manufacturer or supplier of the Goods, or any other cause or causes or circumstances whatsoever beyond the reasonable control of Seller or manufacturer or supplier of the Goods, then Seller shall not be liable for loss or damage, or failure of or delay in performing its obligations under the Contract and may, at its option, extend the time of delivery of the Goods or terminate unconditionally and without liability the unfulfilled portion of the Contract to the extent so affected or prevented.

### 10. DEFAULT

In the event of (i) Buyer's failure to perform any provisions of this or any other contract with Seller; (ii) Buyer's dissolution, liquidation, insolvency or bankruptcy, or the filing of any voluntary or involuntary petition of bankruptcy, insolvency, reorganization or any other similar proceedings regarding Buyer; (iii) appointment of a trustee, receiver, administrator or liquidator of Buyer or of any material part of Buyer's assets or properties; (iv) general assignment for the creditors of Buyer; (v) a change of the control of Buyer, the result of which would in the reasonable judgement of Seller materially and adversely affect the ability of Buyer to fulfil its obligations under the Contract; (vi) enforcement upon the assets of Buyer of any order regarding attachment or provisional attachment or other similar court orders, other than one which is removed within ten (10) days; or (vii) Buyer's cessation of carrying on its business or a substantial part thereof ("Events of Default"), Seller may, at its sole discretion, by notice in writing to Buyer to this effect (i) terminate this and/or any other contract with Seller or any part thereof, (ii) declare all obligations of Buyer immediately due and payable; (iii) resell or hold the Goods for Buyer's account and risk; (iv) postpone the delivery of the Goods; and/or (v) stop the Goods in transit, and Buyer shall reimburse Seller for all losses or damages arising directly or indirectly from such Events of Default.

### 11. INDUSTRIAL PROPERTY RIGHTS

11.1 Nothing herein contained shall be construed as transferring any patent, trademark, utility model, design, copyright, mask work or any other intellectual property rights in the Goods, all such rights being expressly reserved to the true and lawful owner.

11.2 Seller shall not be responsible for any infringement or unauthorised use with regard to patent, utility model, trademark, design, copyright, mask work or any other industrial property right. In case any dispute or claim arises in connection with the above right(s), Seller reserves the right to cancel the Contract and hold itself free form any liability arising therefrom.

### 12. TITLE

12.1 The property in and legal title to the Goods shall not pass to Buyer until Seller has received in full (in cash or cleared funds) all sums due to it in respect of: (a) the Goods; and (b) all other sums which are or which become due to Seller from Buyer on any account.

12.2 Until such time as the property in the Goods has passed to Buyer, Buyer shall: (a) hold the Goods on a fiduciary basis as Seller's bailee; (b) store the Goods (at no cost to Seller) separately from all other goods of Buyer or any third party in such a way that they remain readily identifiable as Seller's property; (c) not destroy, deface or obscure any identifying mark or packaging on or relating to the Goods; and (d) maintain the Goods in satisfactory condition and keep them insured on Seller's behalf for their full price against all risks to the reasonable satisfaction of Seller. On request Buyer shall produce the policy of insurance to Seller.

12.3 Buyer may resell the Goods before property in the Goods has passed to it on condition that any sale or use of the Goods shall be effected in the ordinary course of Buyer's business and any sale shall be at full market value.

12.4 Buyer grants Seller, Seller's agents and employees an irrevocable licence at any time to enter any premises where the Goods are or may be stored in order to inspect them, or, where Buyer's right to possession has terminated, to recover them.

12.5 Buyer's right to possession of the Goods shall terminate immediately upon the occurrence of any of the Events of Default specified in Condition 10.

### 13. LIMITATION OF LIABILITY

13.1 The following provisions set out the entire financial liability of the Seller (including any liability for the acts or omissions of its employees, agents and sub-contractors) to the Buyer in respect of: (a) any breach of these Conditions; (b) any use made or resale by the Buyer of any of the Goods, or of any product incorporating any of the Goods; and (c) any representation, statement or tortuous act or omission including negligence arising under or in connection with the Contract.

13.2 All warranties, conditions and other terms implied by statute or common law (save for the conditions implied by section 12 of the Sale of Goods Act 1979) are, to the fullest extent permitted by law, excluded from the Contract.

13.3 Nothing in these Conditions excludes or limits the liability of the Seller: (a) for death or personal injury caused by the Seller's negligence; or (b) under section 2(3) of the Consumer Protection Act 1987; or (c) for any matter which it would be illegal for the Seller to exclude or attempt to exclude its liability; or (d) for fraud or fraudulent misrepresentation.

13.4 Subject to the previous two paragraphs: (a) the Seller's total liability in contract, tort (including negligence or breach of statutory duty), misrepresentation, restitution or otherwise, arising in connection with the performance or contemplated performance of the Contract shall be limited to the Contract price; and (b) the Seller shall not be liable to the Buyer for: i) any pure economic loss, loss of profit, loss of business, depletion of goodwill or otherwise, in each case whether direct, indirect or consequential, or ii) any claims for indirect, incidental or consequential compensation, loss or damage whatsoever (howsoever caused) which arise out of or in connection with the Contract.

### 14. MISCELLANEOUS

14.1 In case there is any provision on the face of the Contract which prohibits or restricts Buyer from or to doing certain acts (e.g. destination restriction clause), Buyer shall ensure that its customers and users of the Goods will comply with such prohibition or restriction, provided that this provision shall not, in any way, be construed to diminish Buyer's obligation to comply with such prohibition or restriction.

14.2 The rights and remedies of Seller hereunder are cumulative and in addition to Seller's rights, powers and remedies existing at law, in equity or otherwise.

14.3 The failure of Seller at any time to require full performance by Buyer of the terms hereof shall not affect the right of Seller to enforce the same. The waiver by Seller of any breach of any provision of the Contract shall not be construed as a waiver of any succeeding breach of such provision or waiver of the provision itself.

14.4 Buyer shall not transfer or assign the Contract or any part thereof.

14.5 If any provision of the Contract is found by any court, tribunal or administrative body of competent jurisdiction to be wholly or partly illegal, invalid, void, voidable, unenforceable or unreasonable it shall to the extent of such illegality, invalidity, voidness, voidability, unenforceability or unreasonableness be deemed severable and the remaining provisions of the Contract and the remainder of such provision shall continue in full force and effect.

14.6 The Conditions together with any other terms expressly agreed in writing between the parties in relation to the Goods constitute the entire agreement between the parties hereto with respect to the Goods. This Contract may not be supplemented, modified or amended except by a written agreement of the parties hereto.

14.7 The parties to the Contract do not intend that any term of the Contract shall be enforceable by virtue of the Contracts (Rights of Third Parties) Act 1999 by any person that is not a party to it.

14.8 The trade terms herein used, such as FOB, CFR, and CIF, shall be interpreted in accordance with Incoterms. In all other respects, the Contract shall be governed by and construed in accordance with the laws of England.

14.9 In case Buyer is a corporation, entity or partnership established outside U.K., which does not have a branch in U.K. capable of accepting service, any dispute arising out of or in connection with the Contract, including any question regarding its existence, validity or termination, and claims for set-off and counterclaim shall be referred to and finally resolved by arbitration in London under the Rules of the London Court of International Arbitration ("LCIA"). The language of the proceedings shall be English. The award of the arbitration shall be final and binding upon the parties hereto and shall not be appealed to any court. As long as no request for arbitration has been received by the LCIA, Seller may bring proceedings under the jurisdiction of the Courts of England in which case the Courts of England have exclusive jurisdiction to settle any dispute arising out of or in connection with the Contract (including claims for set-off and counterclaims).

14.10 In case Buyer is not such corporation, entity or partnership as mentioned in clause 14.9, both parties agree that the Courts of England are to have exclusive jurisdiction to settle any dispute (including claims for set-off and counterclaim) arising out of or in connection with the Contract, including any question regarding its existence, validity or termination and for such purposes irrevocably submit to the jurisdiction of the English Courts.

14.11 All communications between the parties about the Contract shall be in writing and delivered by hand or sent by pre-paid first class post or sent by fax to the recipient's registered address or such other address as may be specified from time to time. Notices sent by pre-paid first class post shall be deemed to have been received two working days after posting. Notices sent by pre-paid post from outside the UK shall be deemed to have been received five working days after posting. Notices sent by fax on a working day before 4.00 pm (time at recipient's location) shall be deemed to have been received at the time of transmission and otherwise shall be deemed to have been received on the next working day. Notices delivered by hand shall be deemed to have been received on the day of delivery. Working days are days on which banks are open for business in London, England.

# EXHIBIT 4

14947

## Transfer page print 

26/02/2007

| | |
|---|---|
| Payment serial no. | 418 |
| Payment type | International transfer |
| Payment state | Executed |
| Amount | USD 1,407,009.33 |
| Value date | 22/02/2007 |
| Debit account | 0059955102 / WPMF Oslo USD |

**Beneficiary**

Sumitomo Corporation Europe
Vinters Place, 68 Upper Thames
Street, London EC4V 3BJ, England

Account number 00010043400
Email

**Beneficiary bank**

Citibank N.a.
Citigroup Centre / Canary Wharf: 33
E14 London
United Kingdom

Bank code
Swift        CITIGB2LXXX

**Message**

Inv. 9001008441/9001008671/90010084..

**Intermediary bank**

Swift

Bank code

Ultimate beneficiary bank

**Details**

Own reference
Charges paid by      Shared
Base template        Sumitomo Corp. Europe Plc., London
Executing country    GB
Pre-advice           False

**Additional fields**

# Transfer page print 

09/03/2007

| | |
|---|---|
| Payment serial no. | 462 |
| Payment type | International transfer |
| Payment state | Executed |
| Amount | USD 378,235.00 |
| Value date | 07/03/2007 |
| Debit account | 0059955102 / WPMF Oslo USD |

**Beneficiary**

Sumitomo Corporation Europe
Vinters Place, 68 Upper Thames
Street, London EC4V 3BJ, England

Account number  00010043400
Email

**Beneficiary bank**

Citibank N.a.
Citigroup Centre / Canary Wharf: 33
E14 London
United Kingdom

Bank code
Swift  CITIGB2LXXX

**Message**

9001008660 USNS Sumner

**Intermediary bank**

Swift
Bank code

**Ultimate beneficiary bank**

**Details**

Own reference
Charges paid by  Shared
Base template  Sumitomo Corp. Europe Plc., London
Executing country  GB
Pre-advice  False

**Additional fields**



# Transfer page print

13/04/2007

| | |
|---|---|
| Payment serial no. | 574 |
| Payment type | International transfer |
| Payment state | Executed |
| Amount | USD 261,333.03 |
| Value date | 10/04/2007 |
| Debit account | 0059955102 / WPMF Oslo USD |

**Beneficiary**

Sumitomo Corporation Europe
Vinters Place, 68 Upper Thames
Street, London EC4V 3BJ, England

Account number 00010043400
Email

**Beneficiary bank**

Citibank N.a.
Citigroup Centre / Canary Wharf: 33
E14 London
United Kingdom

Bank code
Swift                CITIGB2LXXX

**Message**

Inv. 9001009281 USNS Mary Sears

**Intermediary bank**

Swift

Bank code

**Ultimate beneficiary bank**

**Details**

Own reference
Charges paid by      Shared
Base template        Sumitomo Corp. Europe Plc., London
Executing country    GB
Pre-advice           False

**Additional fields**

Wilhelmsen Bunkers AS                                                                 13

## Transfer page print



25/04/2007

| | |
|---|---|
| Payment serial no. | 614 |
| Payment type | International transfer |
| Payment state | Executed |
| Amount | USD 112,879.60 |
| Value date | 24/04/2007 |
| Debit account | 0059955102 / WPMF Oslo USD |

**Beneficiary**

Sumitomo Corporation Europe
Vinters Place, 68 Upper Thames
Street, London EC4V 3BJ, England

Account number 00010043400
Email

**Beneficiary bank**

Citibank N.a.
Citigroup Centre / Canary Wharf: 33
E14 London
United Kingdom

Bank code
Swift  CITIGB2LXXX

**Message**

Inv 9001009564

**Intermediary bank**

Swift

Bank code

**Ultimate beneficiary bank**

**Details**

Own reference
Charges paid by   Shared
Base template    Sumitomo Corp. Europe Plc., London
Executing country  GB
Pre-advice       False

**Additional fields**

# Transfer page print



27/04/2007

| | |
|---|---|
| Payment serial no. | 618 |
| Payment type | International transfer |
| Payment state | Executed |
| Amount | USD 255,388.60 |
| Value date | 26/04/2007 |
| Debit account | 0059955102 / WPMF Oslo USD |

**Beneficiary**

Sumitomo Corporation Europe
Vinters Place, 68 Upper Thames
Street, London EC4V 3BJ, England

Account number  00010043400
Email

**Beneficiary bank**

Citibank N.a.
Citigroup Centre / Canary Wharf: 33
E14 London
United Kingdom

Bank code
Swift  CITIGB2LXXX

**Message**

Inv. 9001009565 Usns Bowditch

**Intermediary bank**

Swift
Bank code

**Ultimate beneficiary bank**

**Details**

Own reference
Charges paid by  Shared
Base template  Sumitomo Corp. Europe Plc., London
Executing country  GB
Pre-advice  False

**Additional fields**

# Transfer page print 

09/05/2007

| | |
|---|---|
| Payment serial no. | 644 |
| Payment type | International transfer |
| Payment state | Executed |
| Amount | USD 1,515,179.52 |
| Value date | 04/05/2007 |
| Debit account | 0059955102 / WPMF Oslo USD |

**Beneficiary**

Sumitomo Corporation Europe
Vinters Place, 68 Upper Thames
Street, London EC4V 3BJ, England

Account number 00010043400
Email

**Beneficiary bank**

Citibank N.a.
Citigroup Centre / Canary Wharf: 33
E14 London
United Kingdom

Bank code
Swift CITIGB2LXXX

**Message**

SS Maj Stephen Pless Inv.9001009670

**Intermediary bank**

Swift

Bank code

**Ultimate beneficiary bank**

**Details**

Own reference
Charges paid by     Shared
Base template      Sumitomo Corp. Europe Plc., London
Executing country  GB
Pre-advice         False

**Additional fields**

# Transfer page print



16/05/2007

| | |
|---|---|
| Payment serial no. | 683 |
| Payment type | International transfer |
| Payment state | Executed |
| Amount | USD 250,960.86 |
| Value date | 14/05/2007 |
| Debit account | 0059955102 / WPMF Oslo USD |

| Beneficiary | Beneficiary bank |
|---|---|
| Sumitomo Corporation Europe | Citibank N.a. |
| Vinters Place, 68 Upper Thames | Citigroup Centre / Canary Wharf: 33 |
| Street, London EC4V 3BJ, England | E14 London |
| | United Kingdom |

| | | | |
|---|---|---|---|
| Account number | 00010043400 | Bank code | |
| Email | | Swift | CITIGB2LXXX |

**Message**

INV. 9001009892 usns mARY sEARS

**Intermediary bank**

Swift

Bank code

**Ultimate beneficiary bank**

**Details**

Own reference
Charges paid by     Shared
Base template       Sumitomo Corp. Europe Plc., London
Executing country   GB
Pre-advice          False

**Additional fields**

# Transfer page print



05/06/2007

| | |
|---|---|
| Payment serial no. | 728 |
| Payment type | International transfer |
| Payment state | Executed |
| Amount | USD  332,739.52 |
| Value date | 01/06/2007 |
| Debit account | 0059955102 / WPMF Oslo USD |

**Beneficiary**

Sumitomo Corporation Europe
Vinters Place, 68 Upper Thames
Street, London EC4V 3BJ, England

Account number  00010043400
Email

**Beneficiary bank**

Citibank N.a.
Citigroup Centre / Canary Wharf; 33
E14 London
United Kingdom

Bank code
Swift      CITIGB2LXXX

**Message**

Inv. 9001010145/9001010144
USNS Bowditch/Westpac Express

**Intermediary bank**

Swift

Bank code

**Ultimate beneficiary bank**

**Details**

Own reference
Charges paid by      Shared
Base template        Sumitomo Corp. Europe Plc., London
Executing country    GB
Pre-advice           False

**Additional fields**

# Transfer page print

05/06/2007



| | |
|---|---|
| Payment serial no. | 728 |
| Payment type | International transfer |
| Payment state | Executed |
| Amount | USD 332,739.52 |
| Value date | 01/06/2007 |
| Debit account | 0059955102 / WPMF Oslo USD |

| Beneficiary | Beneficiary bank |
|---|---|
| Sumitomo Corporation Europe | Citibank N.a. |
| Vinters Place, 68 Upper Thames | Citigroup Centre / Canary Wharf: 33 |
| Street, London EC4V 3BJ, England | E14 London |
| | United Kingdom |

| | | | |
|---|---|---|---|
| Account number | 00010043400 | Bank code | |
| Email | | Swift | CITIGB2LXXX |

**Message**
Inv. 9001010145/9001010144
USNS Bowditch/Westpac Express

**Intermediary bank**

Swift

Bank code

Ultimate beneficiary bank

**Details**

| | |
|---|---|
| Own reference | |
| Charges paid by | Shared |
| Base template | Sumitomo Corp. Europe Plc., London |
| Executing country | GB |
| Pre-advice | False |

**Additional fields**

# Transfer page print

21/06/2007



| | |
|---|---|
| Payment serial no. | 788 |
| Payment type | International transfer |
| Payment state | Executed |
| Amount | USD 590,453.96 |
| Value date | 20/06/2007 |
| Debit account | 0059955102 / WPMF Oslo USD |

**Beneficiary**

Sumitomo Corporation Europe
Vinters Place, 68 Upper Thames
Street, London EC4V 3BJ, England

Account number  00010043400
Email

**Beneficiary bank**

Citibank N.a.
Citigroup Centre / Canary Wharf: 33
E14 London
United Kingdom

Bank code
Swift            CITIGB2LXXX

**Message**

INV 9001010314

**Intermediary bank**

Swift

Bank code

Ultimate beneficiary bank

**Details**

Own reference
Charges paid by    Shared
Base template      Sumitomo Corp. Europe Plc., London
Executing country  GB
Pre-advice         False

**Additional fields**

Wilhelmsen Bunkers AS                                                                 4