William J. Honan (WJH 1922)
Michael J. Frevola (MJF 8359)
HOLLAND & KNIGHT LLP
195 Broadway
New York, NY 10007-3189
(212) 513-3200

ATTORNEYS FOR PLAINTIFF
WILHELMSEN PREMIER MARINE FUELS AS

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| WILHELMSEN PREMIER MARINE FUELS AS,<br><br>Plaintiff,<br><br>-against-<br><br>UBS PROVEDORES PTY LTD. a/k/a USS-UBS INTERNATIONAL and RAECORP INTERNATIONAL PTY LTD.,<br><br>Defendants. | 07 Civ. 5798 (CM)<br><br>**AFFIDAVIT OF MICHAEL J. FREVOLA IN SUPPORT OF PLAINTIFF'S MOTION TO <u>VACATE DISMISSAL ORDER</u>** |

STATE OF NEW YORK        )
                         ) ss:
COUNTY OF NEW YORK       )

Michael J. Frevola, being duly sworn, deposes and says:

1.      I am a member of the firm of Holland & Knight LLP, attorneys for plaintiff Wilhelmsen Premier Marine Fuels AS ("Wilhelmsen"), and I am duly admitted to practice before the United States District Court for the Southern District of New York.

2. I am familiar with the facts and circumstances underlying this dispute and my statements are based upon my own personal knowledge.

3. I provide this affidavit in support of the application of Plaintiff Wilhelmsen Premier Marine Fuels AS to vacate the Order of Dismissal with prejudice dated January 14, 2008 granted in favor of Defendants UBS Provedores Pty Ltd. a/k/a USS-UBS International ("UBS") and RaeCorp International Pty Ltd.

4. On July 19, 2007, our office was contacted by Mr. John Cyna of HSBC USA Bank, N.A. to advise that HSBC had frozen the amount of $68,885.12 in accordance with the Order of Attachment and Writ of Attachment issued by this Court. HSBC's correspondence memorializing this attachment also advised that UBS was the originator on the wire transfer. I have annexed as Exhibit 1 a true copy of HSBC's July 19, 2007 fax confirming the attachment.

5. On July 25, 2007, Holland & Knight notified UBS's Australian counsel that Wilhelmsen had attached an amount of about $68,000 in the custody of HSBC. I have annexed as Exhibit 2 a true copy of my letter to UBS's Australian counsel.

6. Over the course of the next three months, various garnishee banks reported to Wilhelmsen that they had attached a total of $1,108,544.50 in funds being transferred to or from UBS.

7. On September 10, 2007, Ms. Jeanne-Marie Van Hemmen, counsel for UBS, e-mailed me to request details of the various attachments made by garnishee banks in connection with the Order of Attachment and Writ of Attachment issued in this proceeding. I have annexed as Exhibit 3 a true copy of Ms. Van Hemmen's e-mail dated September 10, 2007.

8. In connection with providing this information to counsel for UBS, I called Mr. Cyna at HSBC and obtained the identity of the beneficiary of the wire transfer reported frozen by Mr. Cyna on July 19, 2007. Mr. Cyna told me that the originator on the wire transfer was UBS and the beneficiary on that frozen wire transfer was Australia Bunkering. I also confirmed that the exact amount of the attachment was $68,885.12. I provided that information to Ms. Van Hemmen by e-mail that day. I have annexed as Exhibits 4 and 5 true copies of my e-mail to UBS's counsel on September 10, 2007 that related these facts to her.

9. In addition to providing counsel for UBS with this information, on September 14, 2007 I also provided counsel for UBS with Mr. Cyna's contact details so that she could contact HSBC to confirm the amount under attachment. I provided this information in response to UBS's counsel's request. I have annexed as Exhibit 6 and Exhibit 7, respectively, true copies of UBS's counsel's request for bank contact details and my responses to this request.

10. UBS's counsel contacted several of the garnishee banks by the e-mail addresses provided by Wilhelmsen. In the case of HSBC, Wilhelmsen's counsel only had Mr. Cyna's telephone number, which it provided to UBS's counsel. I have annexed as Exhibit 8 a true copy of an e-mail sent by UBS's counsel to a garnishee bank requesting information regarding UBS's funds under attachment.

11. Turning to the negotiation of the Settlement Agreement, counsel for UBS has suggested in recent communications that the negotiation of numbered Paragraph 1 of the Settlement Agreement included the parties' contemplation that Wilhelmsen would bear the risk of loss in the event that funds comprising the Initial Payment were not received by Wilhelmsen. This suggestion is overbroad and incorrect as applied to the relevant circumstances.

12.    The terms of the Settlement Agreement largely were negotiated between the dates of Tuesday, October 16, 2007 and Friday, October 19, 2007. I e-mailed the first draft of the Settlement Agreement to counsel for UBS at 9:40 a.m. on Tuesday, October 16, 2007. The first version of numbered Paragraph 1 contained an additional sentence at the end, which provided that "Wilhelmsen's not receiving the Initial Payment by 5 p.m. Eastern Standard Time on November 1, 2007 will render this Agreement null and void."

13.    At 3:15 p.m. on Wednesday, October 17, 2007, counsel for UBS responded to me by e-mail with a revised Paragraph 1 that deleted the final sentence of Paragraph 1. After I received this revised Paragraph 1, I spoke with counsel with UBS (I believe later that same day) about this revision. During that discussion, counsel for UBS explained that she could not guarantee that the Attached Funds would not be frozen *en route* to Wilhelmsen's bank account by other creditors of UBS. As shown by the document annexed as Exhibit 9, this concern was a valid concern. The document annexed as Exhibit 9 is a Rule B attachment order obtained by another creditor of UBS, Australia Bunkering, on October 24, 2007 (or two days after UBS and Wilhelmsen executed the Settlement Agreement).

14.    After I discussed with Wilhelmsen the risk of having a portion of the Attached Funds frozen, and the possibility that Wilhelmsen might have to fight other creditors for those funds, Wilhelmsen decided to accept that risk. Specifically, Wilhelmsen accepted the risk that that some portion of the Attached Funds might be attached by another creditor before those funds reached Wilhelmsen's bank account.

15.    In contrast, no discussion ever occurred between me and counsel for UBS on the issue of which party would bear the risk of loss in the event that UBS essentially never sent the

Attached Funds to Wilhelmsen in the first place. If counsel for UBS had said, for example, that it could not guarantee that it would originate the Initial Payment of $1,108,544.50, but that it might only originate $500,000, that would have been a term to which Wilhelmsen would have rejected.

16. Similarly, could have proposed other language which would not have obligated UBS to pay the sum certain of $1,108544.50, but UBS did not. For example, UBS simply could have proposed that it would release all funds attachment, rather than give a defined amount. But UBS did not do this.

17. For these reasons, a suggestion made by UBS that it and Wilhelmsen discussed risk of loss in this context simply is not correct.

18. On October 22, 2007, the parties executed their Settlement Agreement which had the following exhibits: (1) Wilhelmsen's claims under the 2007 Bunkering Agreement that comprised Wilhelmsen's claims in this proceeding; (2) the Consent Order that the parties would submit to this Court to direct the release of the agreed sum of $1,108,544.50; and (3) a "Cease and Desist" letter to be served by Wilhelmsen on the Garnishee Banks to stop any further attachment of funds in this proceeding.

19. The Consent Order was submitted by the parties to the Court and endorsed by the Court the same day that the Settlement Agreement was signed. To facilitate the settlement, that same day Wilhelmsen circulated the Consent Order and the "Cease and Desist" letter to the garnishee banks in order to release the funds that were to constitute Defendants' Initial Payment obligation under the Settlement Agreement. Over the course of the next several days,

Wilhelmsen received all of the funds due under the Initial Payment provided under the Settlement Agreement with the exception of the amount of $68,885.12 which HSBC had reported as frozen on July 19, 2007. With regard to HSBC, I annex as Exhibit 10 a true copy of my telefax to Mr. Cyna dated October 24, 2007 advising of the settlement.

20. In addition to the amount of $1,108,544.50, which was defined as the "Attached Funds" and which comprised the Initial Payment under the Settlement Agreement, Wilhelmsen also had attached the approximate amount of $44,000 at Citibank, N.A. ("Citibank") on or about October 22, 2007. As I understood this to be an amount that would exceed the $1,108,544.50 to which Wilhelmsen was entitled, I notified counsel for UBS of this latest attachment. Ultimately, Wilhelmsen released the $44,000 to the trust account of counsel for UBS.

21. During the discussion between counsel regarding the release of the $44,000 at Citibank, counsel for UBS asked the following question:

> Can you provide me with confirmation that Wilhelmsen has received all of the "Initial Payment" and that Citibank still has the $44,000?

A true copy of UBS's counsel's e-mail dated October 29, 2007 is annexed as Exhibit 11.

22. In response to that inquiry, I replied:

> On the Initial Payment side, I have to confirm exact numbers with Wilhelmsen through Nordea London but I am pretty sure that we have gotten everything but the $68K from HSBC (the numbers match up that way). I spoke to HSBC a little earlier and I just re-sent my fax of last Wednesday attaching the Consent Order. HSBC confirmed that they still have the $68K, so that also leads me to believe that this is a still remaining amount outstanding.

A true copy of my e-mail dated October 29, 2007 to UBS's counsel is annexed as Exhibit 12.

23. After the Settlement Agreement was executed, I continued to speak with HSBC about the outstanding $68,885.12. On October 29, 2007, I spoke again with Mr. Cyna and re-sent my fax dated October 24, 2007. On October 30, 2007, I spoke again with Mr. Cyna, at which point he advised that he had been told by his wire department that the HSBC funds had been released that day to Wilhelmsen. After receiving this word, I asked Wilhelmsen to check their accounts to confirm that no payments had been received from HSBC. Wilhelmsen advised that they had not received the HSBC payment.

24. On November 2, 2007, I spoke with HSBC once again, Mr. Cyna advised that HSBC was trying to send the funds to Wilhelmsen and they were "bouncing back" (his words).

25. On November 6, 2007, I spoke once again with HSBC for an update on the status of payment of the remaining $68,885.12. Mr. Cyna spoke with his wire department and they told him that the indications were that the funds did go out to Nordea (Wilhelmsen's bank), but that they have not yet received a confirmation receipt from Nordea. The HSBC representative asked that Wilhelmsen check again with Nordea to see if the funds now have arrived.

26. On December 4, I once again contacted HSBC to determine the status of its payment of the outstanding $68,885.12. Once again, I was told that the wire department had sent the funds to Wilhelmsen's London account and that hopefully it would not result in a "bounce back."

27. On December 18, 2007, I repeated my inquiry with Mr. Cyna and was advised that Wilhelmsen should check recent activity to see if the funds finally had cleared at Wilhelmsen's London account.

28. On or about December 28, 2007, I spoke once again with Mr. Cyna. In that conversation, he advised me for the first time that HSBC did not have the $68,885.12 in funds that it previously had reported as under attachment. According to Mr. Cyna, the funds attached on July 19, 2007 were released on or about July 20, 2007 through a computer error that occurred during an upgrade or other type of computer maintenance session. I have not spoken with Mr. Cyna since that telephone conversation.

29. Approximately ten days later, counsel for UBS e-mailed me to confirm that UBS had satisfied its requirements under the Settlement Agreement, thereby warranting this Court to enter an order of dismissal. A true copy of UBS's counsel's e-mail is annexed as Exhibit 13.

30. Later that week, I replied that HSBC had not released to Wilhelmsen the funds that it had held and UBS continued to owe $68,885.12 under the Settlement Agreement. In that response, I also reminded UBS's counsel that UBS had failed to fulfill its obligations under the Settlement Agreement with regard to "provid[ing] to Wilhelmsen copies of its application for the Government Claims as well as a full record of its correspondence with the U.S. government concerning the Government Claims." This suggested to me that UBS likewise was failing to fulfill its obligation under the Settlement Agreement to use its "best endeavors to recover from the U.S. government on the Government Claims." Although I gave UBS two weeks (that is, until today, January 25) to meet these outstanding obligations, UBS still remains in default of these obligations under the Settlement Agreement as well. A true copy of my response to UBS's counsel's e-mail is annexed as Exhibit 14.

31. On January 11, 2008, UBS stated that it had fulfilled its payment obligations under the Settlement Agreement, denied any liability for the outstanding amount of $68,885.12 and advised that it had filed a request for the Court to enter an order of dismissal based on the terms of the Settlement Agreement. A true copy of UBS's January 11, 2008 e-mail is annexed as Exhibit 15.

**WHEREFORE**, Plaintiff respectfully requests that the Court vacate its Order of Dismissal.

                                                                               Michael J. Frevola

Sworn to before me this
25th day of January, 2008

_____
Notary Public

Elvin Ramos
Notary Public, State of New York
NO. 01RA4870243
Qualified in Queens County
Certificate filed in New York County
Commission Expires September 2, 2010