William J. Honan
Michael J. Frevola
HOLLAND & KNIGHT LLP
195 Broadway
New York, NY 10007-3189
(212) 513-3200

ATTORNEYS FOR PLAINTIFF
WILHELMSEN PREMIER MARINE FUELS AS

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| WILHELMSEN PREMIER MARINE FUELS AS,<br><br>               Plaintiff,<br><br>              -against-<br><br>UBS PROVEDORES PTY LTD. a/k/a<br>USS-UBS INTERNATIONAL and<br>RAECORP INTERNATIONAL PTY LTD.,<br><br>               Defendants. | 07 Civ. 5798 (CM) |

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S
MOTION TO VACATE THE COURT'S ORDER OF DISMISSAL**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................................................ii

PRELIMINARY STATEMENT .............................................................................................1

STATEMENT OF FACTS........................................................................................................1

ARGUMENT..............................................................................................................................8

   A.  Amounts Due and Amounts Paid ...............................................................................8

   B.  UBS Knew Or Reasonably Should Have Known That HSBC Was
Not Holding The Funds At The Time Of The Settlement
Agreement......................................................................................................................9

   C.  Wilhelmsen Did Not Accept The Risk That HSBC Did Not Have
The Funds On September 22, 2007 ...........................................................................10

CONCLUSION ........................................................................................................................14

i

ii

# TABLE OF AUTHORITIES

*DDCLAB Ltd. v. E.I. Dupont De Nemours & Co.*,
    Civ. No. 03-3654GBD, 2005 WL. 425495
    (S.D.N.Y. Feb. 18, 2005) .................................................................................... 13

## PRELIMINARY STATEMENT

On October 22, 2007, Wilhelmsen Premier Marine Fuels AS ("Wilhelmsen" or "Plaintiff") entered into a Settlement Agreement and Release ("Settlement Agreement") with UBS Provedores Pty Ltd. ("UBS") and Raecorp International Pty Ltd. (collectively, "Defendants"). Upon Defendants' complete performance of its payment obligations under the Settlement Agreement, Wilhelmsen was to submit to the Court an order of dismissal which, among other things, would have the effect of dismissing, with prejudice, Wilhelmsen's lawsuit against the Defendants.

As the amount of $68,885.12 was not transferred from HSBC Bank USA, N.A. ("HSBC") as required by the Settlement Agreement, Wilhelmsen did not submit the order of dismissal to the Court. Without prior notice to Wilhelmsen and without informing the Court of the contested issues, the Defendants, in a letter to the Court dated January 11, 2008, represented to the Court that it had complied with the terms of the Settlement Agreement and that Wilhelmsen had failed to submit the order of dismissal.

With that letter, Defendants included a proposed order of dismissal of its own making, which the Court signed on January 14, 2008. Plaintiff immediately protested and the Court requested each party to submit its position in writing for the Court's consideration. This memorandum describes Wilhelmsen's position in support of its motion to vacate the Court's order of dismissal.

## STATEMENT OF FACTS

Wilhelmsen filed this lawsuit on June 19, 2007. This Court subsequently issued its order of attachment and the clerk issued a writ of maritime attachment (collectively, the "PMAG"), which Wilhelmsen commenced serving on garnishee banks in this proceeding. On July 19,

2007, Mr. John Cyna of HSBC got in touch with Holland & Knight, counsel for Wilhelmsen. He advised that HSBC had frozen the amount of $68,885.12 in accordance with the PMAG. Affidavit of Michael J. Frevola dated January 25, 2008 ("Frevola Aff."), ¶ 4 & Ex. 1. On July 25, 2007, Holland & Knight notified UBS's Australian counsel that Wilhelmsen had attached an amount of about $68,000 in the custody of HSBC. *Id.* ¶ 5 & Ex. 2. Over the course of the next three months, various garnishee banks reported to Wilhelmsen that they had attached a total of $1,108,544.50 in funds being transferred to or from UBS. *Id.* ¶ 6.

By an e-mail dated September 10, 2007, UBS's local counsel, Ms. Jeanne-Marie Van Hemmen, sought Holland & Knight's confirmation of the attachment of the funds at HSBC. *Id.* ¶ 7 & Ex. 3. By return e-mail, Holland & Knight stated that, based on information from HSBC, the exact amount was $68,885.12 and that UBS was the originator of the electronic funds transfer. *Id.* ¶ 8 & Ex. 4. Later that same day, Holland & Knight informed UBS's local counsel that HSBC had informed it that the beneficiary was Australia Bunkering. *Id.* ¶ 8 & Ex. 5. On September 14, UBS's local counsel requested the contact details of the relevant person at each of the banks that were holding funds, including HSBC, which information was provided. *Id.* ¶ 9 & Exs. 6 & 7. UBS's counsel contacted several of the garnishee banks by the e-mail addresses provided by Wilhelmsen. *Id.* ¶ 10 & Ex. 8. In the case of HSBC, Wilhelmsen's counsel only had Mr. Cyna's telephone number, which it provided to UBS's counsel. *Id.* ¶ 10 & Ex. 7. Presumably, UBS's counsel likewise contacted HSBC as she had contacted other garnishee banks.

By its Order of September 28, 2007, this Court issued its decision denying Defendants' motion to vacate Wilhelmsen's maritime attachment. Defendants then approached Wilhelmsen

2

in an effort to settle Wilhelmsen's claims, which ultimately resulted in the execution of the Settlement Agreement at issue before the Court.

The terms of the Settlement Agreement largely were negotiated between the dates of Tuesday, October 16, 2007 and Friday, October 19, 2007. *Id.* ¶ 12. As discussed in detail in the accompanying Frevola Affidavit, the parties' attorneys revised numbered Paragraph 1 of the Settlement Agreement (the paragraph on which UBS relies to claim it has performed fully) from its original proposed form in only one fashion: by deleting the final sentence from that paragraph. That sentence provided that "Wilhelmsen's not receiving the Initial Payment by 5 p.m. Eastern Standard Time on November 1, 2007 will render this Agreement null and void." *See id.* ¶¶ 12-13. In discussing the revision of numbered Paragraph 1, counsel for UBS explained that she could not guarantee that the Attached Funds would not be frozen *en route* to Wilhelmsen's bank account by other creditors of UBS. This concern was valid. Two days after the Settlement Agreement was executed, another creditor of UBS obtained its own Rule B attachment order against UBS in this jurisdiction. *Id.* ¶ 13 & Ex. 9.

After Wilhelmsen and its counsel discussed the risk of having a portion of the Attached Funds frozen by one or more third parties and the possibility that Wilhelmsen might have to fight other creditors for those funds, Wilhelmsen agreed to accept the risk that some portion of the Attached Funds might be attached by another creditor before those funds reached Wilhelmsen's bank account. *Id.* ¶ 14. In contrast, there was no discussion on the issue of which party would bear the risk of loss in the event that UBS failed to pay the Attached Funds to Wilhelmsen in the first place. *Id.* ¶ 15.

On October 22, 2007, the parties executed the Settlement Agreement which had the following exhibits:

3

    1.    Wilhelmsen's claims under the 2007 Bunkering Agreement that comprised Wilhelmsen's claims in this proceeding;

    2.    The Consent Order that the parties would submit to this Court to direct the release of the agreed sum of $1,108,544.50; and,

    3.    A "Cease and Desist" letter to be served by Wilhelmsen on the Garnishee Banks to stop any further attachment of funds in this proceeding.

*Id.* ¶ 18.

The Consent Order was submitted by the parties to the Court and endorsed by the Court the same day that the Settlement Agreement was signed. To facilitate the settlement, that same day Wilhelmsen circulated the Consent Order and the "Cease and Desist" letter to the garnishee banks in order to release the funds that were to constitute Defendants' Initial Payment obligation under the Settlement Agreement. Frevola Aff., ¶ 19. Over the course of the next several days, Wilhelmsen received all of the funds due under the Initial Payment provided under the Settlement Agreement with the exception of the amount of $68,885.12 which HSBC had reported as frozen on July 19, 2007. *Id.*

In addition to the amount of $1,108,544.50, which was defined as the "Attached Funds" and which comprised the Initial Payment under the Settlement Agreement, Wilhelmsen also had attached the approximate amount of $44,000 at Citibank, N.A. ("Citibank") on or about October 22, 2007. *Id.* ¶ 20. As this amount was understood by Wilhelmsen to be an amount that would exceed the $1,108,544.50 to which Wilhelmsen was entitled, Wilhelmsen notified counsel for UBS of this latest attachment. Ultimately, Wilhelmsen released the $44,000 to the trust account of counsel for UBS. *Id.*

During the discussion between counsel regarding the release of the $44,000 at Citibank, counsel for UBS asked the following question:

> Can you provide me with confirmation that Wilhelmsen *has received all of the "Initial Payment"* and that Citibank still has the $44,000?

*Id.* ¶ 21 & Ex. 11.

In response to that inquiry, counsel for Wilhelmsen replied:

> On the Initial Payment side, I have to confirm exact numbers with Wilhelmsen through Nordea London but I am pretty sure that we have gotten everything but the $68K from HSBC (the numbers match up that way). I spoke to HSBC a little earlier and I just re-sent my fax of last Wednesday attaching the Consent Order. HSBC confirmed that they still have the $68K, so that also leads me to believe that this is a still remaining amount outstanding.

*Id.* ¶ 22 & Ex. 12.

UBS now contends that it has complied with the Settlement Agreement (1) by executing the Consent Order and (2) by paying to Wilhelmsen the Second Payment under the Settlement Agreement. UBS alleges that Wilhelmsen bore the risk of loss for Wilhelmsen not receiving the Initial Payment.

That broad based allegation is inaccurate. As noted above, counsel for UBS and Wilhelmsen did address a particular issue – who would bear the risk of a subsequent attachment of the Initial Payment in between the time when the Consent Order directed the release of the Initial Payment and the time that it was received by Wilhelmsen. That issue was discussed in detail because another creditor of UBS – Australia Bunkering Pty Ltd. – had filed a New York Rule B application and it was an open question whether the Initial Payment would escape the Australia Bunkering writ. Accordingly, UBS could not guarantee that the Australian Bunkering writ would not re-freeze the funds before they departed the jurisdiction. Wilhelmsen decided to rely on the timing of the execution of the Settlement Agreement and its senior position *vis a vis* a

subsequent attaching party in accepting the risk that the Initial Payment might be attached and necessitate an application by Wilhelmsen under Rule E(4)(f) to vacate the subsequent attachment.

There was, however, no discussion as to what would occur if the Initial Payment, in full, was not sent by the garnishee banks. This is made clear by the question quoted above from UBS's counsel to Wilhelmsen's counsel one week after the Settlement Agreement was executed – "Can you provide me with confirmation that Wilhelmsen has received all of the 'Initial Payment' and that Citibank still has the $44,000?" UBS's counsel posed that question because she understood that release of *all* of the Initial Payment was required under the Settlement Agreement.

Furthermore, when she was advised by Wilhelmsen that the appropriate amount of $68,000 had not been released from HSBC, counsel for UBS easily could have disavowed any responsibility for that amount. Instead, counsel for UBS remained mute on this subject while, at the same time, pressing for the release of the additional $44,000 that remained under attachment with Citibank. With that amount, Wilhelmsen could have partially offset the shortfall. Instead, Wilhelmsen released the $44,000 relying, in good faith, on its behalf that it would receive the full amount of its Initial Payment.

On or about December 28, 2007, Wilhelmsen's counsel spoke once again with Mr. Cyna of HSBC. In that conversation, Mr. Cyna advised Wilhelmsen for the first time that HSBC did not have the $68,885.12 in funds that it previously had reported as under attachment. According to Mr. Cyna, the funds attached on July 19, 2007 were released on or about July 20, 2007 through a "computer error" which occurred during an upgrade or other type of computer maintenance session. Frevola Aff., ¶ 28.

6

Approximately ten days later, counsel for UBS got in touch with Wilhelmsen to confirm that UBS had satisfied its requirements under the Settlement Agreement, thereby triggering the order of dismissal. *Id.* ¶ 29 & Ex. 13. Later that week, Wilhelmsen replied that HSBC had not released to Wilhelmsen the funds that it had held and UBS continued to owe $68,885.12 under the Settlement Agreement. *Id.* ¶ 30 & Ex. 14. In that response, Wilhelmsen also reminded UBS that it had failed to fulfill its obligations under the Settlement Agreement with regard to "provid[ing] to Wilhelmsen copies of its application for the Government Claims as well as a full record of its correspondence with the U.S. government concerning the Government Claims." *Id.* This suggested to Wilhelmsen that UBS likewise was failing to fulfill its obligation under the Settlement Agreement to use its "best endeavors to recover from the U.S. government on the Government Claims." *Id.* Although Wilhelmsen gave UBS until today (January 25) to meet these outstanding obligations, UBS still remains in default of these obligations under the Settlement Agreement as well. *Id.*

On January 11, 2008, UBS stated that it had fulfilled its payment obligations under the Settlement Agreement, denied any liability for the outstanding amount of $68,885.12 and advised that it had filed a request for the Court to enter an order of dismissal based on the terms of the Settlement Agreement.

On January 14th, the Court entered an Order of Dismissal based on the application of UBS. On the following day, Wilhelmsen objected to that dismissal and referred to its letter objecting to UBS's application. The Court directed the parties to participate in a telephone conference during which the Court ordered the parties to brief the issue of whether UBS had fulfilled the terms of the Settlement Agreement such that it was entitled to an order of dismissal.

7

## ARGUMENT

UBS's failure to pay Wilhelmsen $1,108,544.50 prevents it from validly submitting the Dismissal Order to the Court.

### A.     Amounts Due and Amounts Paid

Under the terms of the Settlement Agreement, UBS had to make two payments before Wilhelmsen was obliged to submit the Dismissal Order:

1.     the amount of $1,108,544.50; and

2.     the amount of $419,420.49.

As to the first amount, it represented the sum of the eleven electronic funds transfers ("EFT's") belonging to UBS that Wilhelmsen had attached. The parties referred to that total amount in the Settlement Agreement as the "Attached Funds" and the payment by UBS to Wilhelmsen as the "Initial Payment." The second amount was a negotiated number and was referred to as the "Second Payment."

As to the Initial Payment, the parties agreed that UBS could fund that payment by releasing the Attached Funds to Wilhelmsen which UBS, through a Consent Order, did on October 22, 2007. Wilhelmsen, however, received only $1,039,659.38, that is, it received $68,885.12 less than it should have received.

By an e-mail dated January 11, 2008, Wilhelmsen demanded that UBS pay this short-fall in the Initial Payment and gave January 25 as the deadline for such payment. Frevola Aff., Ex. 14. As of the close of business on January 25, the date of this memorandum, UBS has refused to make this payment. As to the Second Payment, it was due on or about December 7, 2007 and was paid. Hence, the unpaid amount which remains outstanding is $68,885.12.

### B. UBS Knew Or Reasonably Should Have Known That HSBC Was Not Holding The Funds At The Time Of The Settlement Agreement

The amount of $68,885.12 represents an EFT that was attached while in the custody of HSBC located in New York City on July 19, 2007, pursuant to the PMAG. *See* Frevola Aff., ¶ 4. Repeatedly, HSBC indicated that it continued to hold those funds. *Id.* ¶¶ 23-27. Notwithstanding HSBC's statement that it would hold those funds "until further notice" and its repeated indications that it continued to hold the funds, it appears that HSBC released the funds on or about July 20, 2007. *Id.* ¶ 28. HSBC offered as an excuse only that a "computer error" had occurred. *Id.*

Without discovery, Wilhelmsen does not know what happened to those funds but there are two obvious possibilities:

1. The funds were released back to the originator's bank, that is, back to UBS.
2. The funds were released to the beneficiary's bank, that is, to Australia Bunkering.

In either case, UBS has enjoyed the use or the direct benefit of those funds.

UBS knew, or reasonably should have known, that HSBC was not holding the funds as of the date of the Settlement Agreement, that is, as of October 22, 2007, some three months after HSBC apparently had released the funds. On July 25, 2007, Holland & Knight notified UBS's Australian counsel that Wilhelmsen had attached an amount of about $68,000 in the custody of HSBC. Frevola Aff., ¶ 5 & Ex. 2. By an e-mail dated September 10, 2007, UBS's local counsel sought Holland & Knight's confirmation of the attachment of the funds at HSBC. *Id.* Ex. 3. By return e-mail Holland & Knight stated that, based on information from HSBC, the exact amount was $68,885.12 and that UBS was the originator of the EFT. *Id.* Exs. 4 & 5. Later that same day Holland & Knight informed UBS's local counsel that HSBC had informed it that the beneficiary

9

was Australia Bunkering. On September 14, UBS's local counsel requested the contact details of the relevant person at, of among others, HSBC, which information was provided. *Id.* Exs. 6 & 7.

Hence, five weeks before the Settlement Agreement was signed, UBS had all the information that it needed to confirm whether HSBC held the funds. As the originator, UBS certainly would have been aware if it had received the funds back from HSBC. If UBS had not received the funds, it knew what dollar denominated payments it had made to its vendors and other creditors. Knowing also the exact amount in question, it should have had little trouble in tracing the intended beneficiary and determining whether the beneficiary had received the payment. Wilhelmsen, on the other hand, had only HSBC's assurances on which to rely.

While what occurred to the funds at HSBC may be interesting, Wilhelmsen firmly believes that, regardless where the funds ended up, UBS's failure to pay the Initial Payment in full is a breach of the Settlement Agreement.

  **C.** **Wilhelmsen Did Not Accept The Risk**
    **That HSBC Did Not Have The Funds**
    **On September 22, 2007**

In UBS's counsel's letter to the Court dated January 16, 2007, she takes the position that the Settlement Agreement places the risk on Wilhelmsen ". . . that one of the attaching banks failed to comply with the Consent Order that directed the funds into Wilhelmsen's account." The terms of the Settlement Agreement certainly provide no basis for such an allegation. As noted above, Section 1 of the Settlement Agreement states "[t]he payment of the Attached Funds to Wilhelmsen will be referred to herein as the 'Initial Payment'." The fourth "WHEREAS" defines the "Attached Funds" as "funds [that] were seized . . . in the amount of ONE MILLION ONE HUNDRED EIGHT THOUSAND FIVE HUNDRED FORTY-FOUR DOLLARS AND FIFTY CENTS ($1,108,544.50). . . ." There then follows a list of the dollar amounts of the eleven

10

attachments that had occurred. Number 7 on that list is the amount of $68,885.12, i.e., the amount that Wilhelmsen had every reason to believe remained frozen at HSBC pursuant to the attachment order.

The funds that comprised the eleven EFT's remained the property of UBS. If UBS sought to allocate to Wilhelmsen the burden of confirming that UBS's property remained under attachment, it should have expressly so stated. It did not do so. During the negotiation of the Settlement Agreement, UBS did not obtain – or even propose – language consistent with the present construction UBS seeks to have this Court to adopt. It would have been a simple matter for UBS to define the Attached Funds and Initial Payment in terms other than as a sum certain of $1,108,544.50. For example, UBS simply could have proposed that its obligation was only to release the funds under attachment. UBS did not do so.

Rather, the language that the parties did use expresses an intent that Wilhelmsen would be paid $1,108,544.50. Section 1 states: "The <u>payment</u> of the Attached Funds to Wilhelmsen will be referred to herein as the "Initial <u>Payment</u>" (emphasis added). Section 2 states that Wilhelmsen will serve a "Cease and Desist" letter only after "having <u>received</u> the Initial Payment" (emphasis added). Section 9, the liability release provision, states that it will take effect only "[u]pon <u>receipt</u> of both the Initial Payment and the Second Payment by Wilhelmsen, . . . " (emphasis added).

Indeed, through its statements after the execution of the Settlement Agreement, UBS itself has acknowledged that a payment, not merely a signed Consent Order, would satisfy the terms of Settlement Agreement.

1) On October 29, 2007 UBS's counsel requested confirmation from Holland & Knight that Wilhelmsen had received every dollar of the "Initial Payment":

11

>Can you provide me with confirmation that Wilhelmsen has received all of the "Initial Payment"....

Frevola Aff., Ex. 11.

2) In UBS's counsel's letter to the Court on January 11, 200[8], she described the settlement thus:

>Plaintiff and UBS have settled their dispute. The terms of the settlement agreement required UBS to make two payments to Wilhelmsen....

Similarly, the terms of the Consent Order, negotiated between counsel, likewise support a conclusion that payment of the entire Initial Payment was required. In the Consent Order, the term "Security" is given a defined meaning: the amount of $1,108,544.50 that had been reported attached by the various garnishee banks. The Consent Order then states that it is "**ORDERED** that *the entirety of the Security* is to released and wired to the following account of Plaintiff's." (emphasis supplied).

Thus, under the terms of both the Settlement Agreement and the Consent Order, UBS was obliged to pay Wilhelmsen the total amount of $1,108,544.50. It has failed to do so.

>1. Evidence Regarding Discussions Prior
>To The Date Of The Settlement
>Agreement Is Irrelevant.

Section 7 of the Settlement Agreement is a typical merger clause:

>7. This Agreement sets forth the entire understanding of the Parties on the matters addressed herein or that are in any way related thereto, and supersedes any and all prior agreements, understandings and negotiations, both written and oral, between the Parties or their affiliates and their counsel. The Parties acknowledge that no statements, whether oral or written, not expressly set forth in this Agreement, have been relied upon or are intended to be made part of this Agreement. This Agreement may not be amended or modified except by a subsequent written agreement executed by all of the Parties hereto.

This Court, in a recent case, described the purpose of a merger clause:

> The purpose of having a merger clause in a contract is so that the parole evidence rule may be applied to preclude the introduction of extrinsic evidence to alter, vary, or contradict the terms of the writing.

*DDCLAB Ltd. v. E.I. Dupont De Nemours & Co.*, Civ. No. 03-3654GBD, 2005 WL 425495, at *3 (S.D.N.Y. Feb. 18, 2005). Hence, the Court should treat as irrelevant any evidence of oral understandings of the parties prior to the signing of the Settlement Agreement.

In the interest of full disclosure, however, counsel did reach an oral understanding, not included in the Settlement Agreement, as to the risk that another creditor might file a suit against UBS and seek to attach the funds that were to be transferred to Wilhelmsen. *See* Frevola Aff., ¶¶ 13-14. Counsel agreed that once the Consent Order was signed by the Court, Wilhelmsen accepted the risk that the funds could be intercepted by another creditor. If that were to occur, Wilhelmsen agreed that it would be its burden to enforce its prior attachment and thereby gain dominion over the contested funds. *Id.* ¶ 14. There was, however, no discussion between counsel and certainly no understanding concerning the possibility that the funds were not in the custody of the intermediary banks. *Id.* ¶¶ 15-17.

That understanding is instructive, however, in explaining why Wilhelmsen served the "Cease and Desist" letter as the garnishee banks when it did. Section 3 of the Settlement Agreement obliges Wilhelmsen, within one business day of receiving the Initial Payment, to serve a letter informing banks not to attach any more of UBS's funds (the "Cease and Desist" letter was annexed to the Settlement Agreement as Exhibit 3). Wilhelmsen did not wait until it received all the funds, a process that could take several days or even weeks, because (i) Wilhelmsen assumed that the banks, including HSBC, had retained custody of the funds and (ii) as an accommodation to UBS to avoid the further attachment of its funds.

Hence, the understanding by counsel as described above and, with more particularity in the Frevola Affidavit, is irrelevant to the issue of UBS's obligation to make the full Initial Payment under the Settlement Agreement in the context of this case.

### 2. A Possible Remedy Against HSBC Does Not Cure UBS's Default.

If a bank, which possesses funds under a court-ordered attachment, releases those funds without justification, the aggrieved party's remedy is against the bank. Usually, the funds, even if they have been released to the originator, are not recoverable.

This case, however, is different. Here, there was a Settlement Agreement in which UBS agreed to pay a sum certain and the parties agreed that UBS could fund that payment by transferring the funds that were under attachment. UBS paid less than the full amount because a portion of the funds was no longer in the custody of one of the banks. UBS, therefore, is in breach of the Settlement Agreement. That Wilhelmsen or UBS may have a remedy against HSBC does not excuse UBS's payment obligation under the Settlement Agreement.

### CONCLUSION

Wilhelmsen, for the reasons set forth above, respectfully requests the Court to vacate its order of dismissal so that Wilhelmsen can enforce its remedies for UBS's failure to pay the full amount due under the Settlement Agreement.

Dated: New York, New York
January 25, 2008

                    HOLLAND & KNIGHT LLP

By: _____
William J. Honan
Michael J. Frevola
195 Broadway
New York, NY 10007-3189
Tel:   (212) 513-3200
Fax:  (212) 385-9010

*Attorneys for Plaintiff*
*Wilhelmsen Premier Marine Fuels AS*

15