William J. Honan
Michael J. Frevola
HOLLAND & KNIGHT LLP
195 Broadway
New York, New York 10007-3189
(212) 513-3200

ATTORNEYS FOR PLAINTIFF
WILHELMSEN PREMIER MARINE FUELS AS

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| WILHELMSEN PREMIER MARINE FUELS AS,<br><br>Plaintiff,<br><br>-against-<br><br>UBS PROVEDORES PTY LTD. a/k/a<br>USS-UBS INTERNATIONAL and<br>RAECORP INTERNATIONAL PTY LTD.,<br><br>Defendants. | 07 Civ. 5798 (CM) |

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S AMENDED**
**MOTION TO VACATE THE COURT'S ORDER OF DISMISSAL**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................................................ii

PRELIMINARY STATEMENT .............................................................................................1

STATEMENT OF FACTS.......................................................................................................2

ARGUMENT.............................................................................................................................8

**POINT I**

**UBS' BREACH OF THE SETTLEMENT AGREEMENT:
FAILURE TO PROVIDE DOCUMENTS AND THE
PAYMENT OF THE GOVERNMENT CLAIMS**..........................................................8

**POINT II**

**UBS IS NOT ENTITLED TO DISMISSAL BECAUSE IT
HAS BREACHED THE SETTLEMENT AGREEMENT
BY FAILING TO PAY THE $2,087,891.75 OWED FROM
THE GOVERNMENT CLAIMS PAYOUT**................................................................11

CONCLUSION .......................................................................................................................14

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Fairfax Countrywide Citizens Ass'n v. County of Fairfax*,
   571 F.2d 1299 (4th Cir.), *cert. denied*, 439 U.S. 1047 (1978)..................................................13

*Nemaizer v. Baker*,
   793 F.2d 58 (2d Cir. 1986)..........................................................................................................12

*Septembertide Publishing, B.V. v. Stein and Day, Inc.*,
   884 F.2d 675 (2d Cir. 1989)........................................................................................................13

*Shor Int'l Corp. v. Eisinger Enter., Inc.*,
   1993 WL 452546 (S.D.N.Y. Nov. 3, 1993)...........................................................................12, 13

## STATE CASES

*Callaman v. Powers*,
   199 N.Y. 268, 92 N.E. 747 (1910).............................................................................................13

## STATUTES AND RULES

Contract Disputes Act, 41 U.S.C. §605(c).........................................................................................5

Federal Acquisition Regulations, 48 C.F.R. §33.207 .......................................................................5

Federal Rule of Civil Procedure 60(b)(6) ...........................................................................1, 12, 13

## PRELIMINARY STATEMENT

Based on the arguments put forth herein and in Wilhelmsen's Motion to Vacate the Court's Order of Dismissal, dated January 25, 2008 ("Wilhelmsen's Initial Motion"), this Court should exercise its discretion to vacate the dismissal of the underlying action.

As explained below, since Wilhelmsen's Initial Motion was filed, the following information has come to light which, in Wilhelmsen's view, warrants the submission of an amended motion setting forth events subsequent to the parties' briefing:

- UBS is obligated under the Settlement Agreement to pay $2,087,891.75 to Wilhelmsen if it is paid for its claims under Tax Invoice 10039;

- UBS' Tax Invoice 10039 dated March 7, 2007 (but unknown to Wilhelmsen whether it was submitted to DESC on March 8, 2007) is part of UBS' "Sasebo Claim";

- UBS was paid $3,550,783.66 by the U.S. Government;

- That payment was made in December 2007;

- It was made in settlement of a claim referenced as "submitted" on March 8, 2007;

- It was for losses claimed with regard to services performed at Sasebo, Japan;

- UBS has only provided redacted documents concerning the submission of its Government Claims and has refused to provide any amplifying documents to clarify the basis on which it was paid by the U.S. Government; and

- UBS moved to dismiss this proceeding within a few weeks after having received the aforementioned $3,550,783.66 but without paying or notifying Wilhelmsen of that payment.

Especially in light of UBS' provision of redacted claims documents and subsequent refusal to support its claim that the payment received was for another claim, the evidence strongly supports a finding that UBS is in further (and highly material) breach of the parties' Settlement Agreement warranting this Court's vacatur of its order of dismissal.

## STATEMENT OF FACTS

On October 22, 2007, Wilhelmsen Premier Marine Fuels AS ("Wilhelmsen" or "Plaintiff") entered into a Settlement Agreement and Release ("Settlement Agreement") with UBS Provedores Pty Ltd. ("UBS") and Raecorp International Pty Ltd. (collectively, "Defendants"). Upon Defendants' complete performance of its payment obligations under the Settlement Agreement, Wilhelmsen was to submit to the Court an order of dismissal which, among other things, would have the effect of dismissing, with prejudice, Wilhelmsen's lawsuit against the Defendants.

As is explained in Wilhelmsen's Initial Motion, the amount of $68,885.12 was not transferred from HSBC Bank USA, N.A. ("HSBC") as required by the Settlement Agreement. Therefore, Wilhelmsen did not submit the order of dismissal to the Court. Without prior notice to Wilhelmsen and without informing the Court of the contested issues, the Defendants, in a letter to the Court dated January 11, 2008, represented to the Court that it had complied with the terms of the Settlement Agreement and that Wilhelmsen had failed to submit the order of dismissal.

With that letter, Defendants included a proposed order of dismissal of its own making, which the Court signed on January 14, 2008. Plaintiff immediately protested and the Court requested that each party submit its position in writing for the Court's consideration.

Since Wilhelmsen's Initial Motion was filed, and while that motion has been *sub judice*, Wilhelmsen has learned that UBS apparently has breached further obligations under the Settlement Agreement. UBS has failed to pay Wilhelmsen the remaining balance of $2,087,891.75 which became due to Wilhelmsen when UBS received over $3.5 million from the U.S. government in December 2007. This amended motion to vacate the Court's dismissal order

incorporates this new information for the Court's consideration. To focus the Court on recent developments, Wilhelmsen's Initial Motion is incorporated herein at Appendix A and supplemented herewith.

**Recent Events**

The parties' Settlement Agreement, which was intended to conclude this litigation (a copy of which is annexed as Exhibit #1 to the van Hemmen Certification dated February 1, 2008 filed with this Court (Doc. #35)), provides in relevant part that:

> WHEREAS, UBS has submitted a claim to the U.S. government under its contract with the Defense Energy Support Center in the amount of THREE MILLION ONE HUNDRED EIGHTY THOUSAND EIGHT HUNDRED FIFTY THREE DOLLARS AND FIFTY-EIGHT CENTS ($3,180,853.58), relating to amounts invoiced pursuant to invoice number 10039 and concerning the bunkerings [claimed in Wilhelmsen's Verified Amended Complaint], which claim presently is under review by the U.S. government (the "Government Claims")
>
> \* \* \*
>
> 6. In addition to the Initial Payment and the Second Payment, UBS will pay to Wilhelmsen TWO MILLION EIGHTY-SEVEN THOUSAND EIGHT HUNDRED NINETY-ONE DOLLARS AND SEVENTY-FIVE CENTS ($2,087,891.75), *which payment will become due when the U.S. Government pays the Government Claims to UBS*. UBS warrants that it will use its best endeavors to recover from the U.S. government on the Government Claims and will provide to Wilhelmsen copies of its application for the Government Claims as well as a full record of its correspondence with the U.S. government concerning the Government Claims. The Parties agree that this amount *will be paid in full from the Government Claims payment <u>before UBS is entitled to keep any of the Government Claims payment for itself</u>*. . . .

Van Hemmen Certification dated Feb. 1, 2008 (Doc. #35), Ex. 1, at pp. 1, 4 (emphasis added).

As is explained in the Affirmation of Ronald H. Uscher, sworn to on May 20, 2008 and submitted herewith ("Uscher Aff."), in January 2008, Wilhelmsen retained the Washington, D.C. office of the law firm of Peckar & Abramson, P.C. to make inquiries with the U.S. Government.

3

(Uscher Aff., ¶ 1). Specifically, Mr. Uscher inquired of the Defense Energy Supply Center ("DESC"), as to the status of UBS' claims pending before the DESC for UBS' fueling services provided to U.S. Government vessels in Sasebo and Naha, Japan. (*Id.* ¶ 4).

On January 30, 2008, Peckar & Abramson served DESC with a request for documents pursuant to the Freedom of Information Act ("FOIA") relating to the contract between DESC and UBS designated as Contract 06-D-0391 (the "DESC/UBS Contract"), and followed up that request with an amended request on February 21, 2008. (Uscher Aff., ¶¶ 5, 8 & Exs. 1, 2).

During this same time period, UBS produced to Wilhelmsen's New York counsel a total of 80 pages of documents regarding its Government Claims (as that term is defined in the parties' Settlement Agreement). The documents produced appeared incomplete and redacted important financial information. As more fully explained in the Affidavit of Michael J. Frevola dated May 20, 2008 submitted herewith ("Frevola Affidavit II"),[1] these redactions and omissions were in violation of the terms of the Settlement Agreement by which UBS agreed to provide Wilhelmsen with a ***full record*** of its correspondence with the DESC, and its application for the claims at issue termed the "Government Claims." (Frevola Affidavit II, ¶ 8). No provision in the Settlement Agreement allowed for the redactions or omissions which UBS undertook when producing documents. Not only did the redactions make it impossible for Wilhelmsen to determine the terms of UBS' submissions to DESC, but they also made it impossible to determine whether the documents produced even were related to the Government Claims and supported UBS' application. For instance, as more fully explained in the Uscher Affirmation, the UBS-produced documents appeared "incomplete" because they did not contain a written claim certification by

---

[1] The Affidavit of Michael Frevola dated January 25, 2008 ("Frevola Affidavit I") was submitted in support of Wilhelmsen's Initial Motion. For ease of reference the exhibits annexed to Frevola Affidavits I and II are numbered sequentially.

4

UBS as required by the Contract Disputes Act ("CDA"), 41 U.S.C. §605(c), and the Federal Acquisition Regulations ("FAR"), 48 C.F.R. §33.207. (Uscher Aff., ¶ 7).

Thus, the documents produced by UBS did not appear to qualify as a "claim" under CDA rules. (*Id.*). Furthermore, the redactions made it impossible to determine whether the documents produced by UBS pertained to the "Government Claims" referenced in the parties' Settlement Agreement. Therefore, Wilhelmsen's New York counsel wrote to UBS' counsel to question the completeness of UBS' document production. (*Id., see also* Frevola Affidavit II, ¶ 9 & Ex. 17).

In response, on April 4, 2008, UBS' counsel confirmed that UBS had produced all documents:

> My client confirms that UBS has produced all claims related documents. UBS states that there were no applicable protocol [*sic*] for submission of its claim which was submitted in the emails provided to Wilhelmsen.

(Frevola Affidavit II, ¶ 10 & Ex. 18).

On March 14, 2008, Peckar & Abramson received an interim reply to its FOIA request to DESC. (Uscher Aff., ¶¶ 9-11). In that reply, DESC provided previously unseen documents which suggested that UBS has been paid for the Government Claims but that UBS failed to advise Wilhelmsen. (*Id.*, Uscher Ex. 4). One of these documents was Modification P00004 of September 24, 2007 ("Mod. 4"). A true copy of Mod. 4 is attached to the Uscher Aff. as Exhibit 3 thereto. Mod. 4 is a modification to the DESC/UBS Contract, which summarizes the history of UBS' March 8, 2007 claim in the amount of $3,550,783.66 related to UBS' performance under the DESC/UBS Contract at Sasebo. (Uscher Aff., ¶ 10 & Uscher Ex. 3). Mod. 4 provides, in pertinent part, that:

> 2. Pursuant to subsequent review of the claim and responses from all concerned parties, the Contracting Officer has determined that the subject claim is valid and the **Contractor [i.e., UBS] will be paid the amount of $3,550,783.66.**
>
> **TOTAL SUM to be paid: $3,550,783.66**

(*See* Uscher Aff., Uscher Ex. 3, p. 2 (first emphasis added)).

After receiving these documents, on March 19, 2008 Peckar & Abramson called Kay Bushman, Esq., an attorney in DESC's Office of General Counsel who is assigned to the DESC/UBS Contract claims. (Uscher Aff., ¶ 12). During that conversation, Ms. Bushman confirmed that UBS was paid the claimed amount of $3,550,783.66, which she believed had occurred sometime in late December 2007. (*Id.*)

As recited in the portion of the Settlement Agreement quoted on page 2 above, the Government Claims are those "relating to amounts invoiced pursuant to *invoice number 10039*." This language was inserted by Defendants' counsel and defined the claim on which UBS would pay Wilhelmsen if paid by the U.S. Government. (Frevola Affidavit II, ¶ 5). The documents produced by UBS include a cover sheet entitled "Sasebo Claim" dated "07 March, 2007" followed by a claim letter of the same date and a document designated "Tax Invoice 10039" which purports to invoice the Government for "1 Each Claim Dated 7th March, 2007." (*See* Uscher Aff., Ex. 5 (for copies of the reference documents)).

The claim amounts on these documents are (improperly) redacted making it both hard to trace submission for and payment of the claims. However, the "Sasebo Claim" dated 07 March, 2007 clearly is the "Claim Dated 7th March, 2007" referred to in Tax Invoice 10039. In turn, Tax Invoice 10039 clearly is the "invoice number 10039" referred to in the second "Whereas" clause of the Settlement Agreement. Therefore, it follows that the "Sasebo Claim" dated 07 March,

6

2007 is the "Government Claims" referred to in the Settlement Agreement, and that Wilhelmsen is entitled to be paid $2,087,891.75 on the Government's payment to UBS of the Sasebo Claim.

This conclusion is supported by the response of UBS' counsel (Frevola Affidavit II, Ex. 18) following Wilhelmsen's New York counsel's April 2, 2008 letter (Ex. 17) questioning the completeness of UBS' document production. UBS' counsel replied: "My client confirms that UBS has produced all claims related documents." (Ex. 18). This response confirms that the Sasebo Claim pertaining to Tax Invoice 10039, was contained in the documents produced by UBS, and must be the "Government Claims" referred to in the parties' Settlement Agreement. The documents produced by UBS contain no other Sasebo claim. The Government has paid $3,550,783.66 on the Sasebo claim, and therefore it appears that UBS most likely has been paid on the "Government Claims." (Uscher Aff., ¶¶ 16, 19).

Having received this information, Wilhelmsen wrote again to UBS' counsel on April 10, 2008 and set forth Wilhelmsen's basis for believing that UBS had been paid for its Government Claims and that UBS had failed to pay Wilhelmsen. In that letter, Wilhelmsen demanded payment of the $2,087,891.75 due under numbered paragraph 6 of the Settlement Agreement by April 14, 2008. A true copy of the letter to UBS' counsel dated April 10, 2008 is annexed to Frevola Affidavit II as Exhibit 19.

In response to this letter, UBS' counsel replied on April 17, 2008, tacitly confirming that UBS had received the $3,550,783.66 payment from DESC and relaying "instructions" from her client as to the nature of that payment. The entirety of her message follows:

> I am ***instructed by my client*** that the payment of $3,550,783.66 relates to services rendered by UBS to DESC which are in no way referable to the claim referenced in the Settlement Agreement.

7

(Frevola Affidavit II, ¶ 13 & Ex. 20 (emphasis added)).

Wilhelmsen's counsel demanded an unredacted copy of the documents produced by UBS related to the Government Claims and the documentation for the "other claim" that UBS alleged was covered by the $3,550,783.66 payment. A true copy of the letter demanding unredacted copies is attached to the Frevola Affidavit II as Exhibit 21.

UBS' counsel sent Tax Invoice 10454 and Mod. 4 in response to the demand for documentation. A true copy of the covering email and attached documents is attached to Frevola Affidavit II as Exhibit 22.

On May 5, 2008, Wilhelmsen's counsel reiterated the request for documents to explain the Government Claims and the DESC payment. A true copy of the May 5, 2008 request is attached to Frevola Affidavit II as Exhibit 23. To date, no further explanation of the Government Claims or the DESC payment has been received.

## ARGUMENT

### POINT I

### UBS' BREACH OF THE SETTLEMENT AGREEMENT: FAILURE TO PROVIDE DOCUMENTS AND THE PAYMENT OF THE GOVERNMENT CLAIMS

In her email of April 29, 2008, UBS provided the following explanation to explain that the DESC payment was not for the Government Claims.

> Attached please find a copy of UBS' tax invoice numbered 10454 in the amount of $3,550,783.66 together with the relevant amendment to the contract, namely P0004. These documents establish that the $3,550,783.66 payment by the government to UBS did not relate to the Government Claims but to a separate and distinct claim. Wilhelmsen was aware at the time of negotiating the Settlement Agreement that UBS had claims other than the Government Claims pending.

(Frevola Affidavit II, Ex. 22).

8

But Tax Invoice 10454 establishes nothing of the sort. Mr. Uscher's Affirmation explains how Tax Invoice 10454 (dated September 24, 2007) is nothing more than an invoice from UBS that reflected the ***settlement reached between UBS and DESC in September 2007*** as to UBS' claim submitted in March 2007:

> 17.   ...***Tax Invoice 10454 is not proof that DESC paid the $3,550,783.66 on a claim other than the Sasebo Claim originally submitted under Tax Invoice 10039***. Tax Invoice 10454 merely invoices for the already agreed-upon Mod. 4 amount, as can be seen by the reference in the Invoice to Mod. 4 and by the date of the Invoice (9/24/07), which is the same as DESC's execution of Mod. 4.
>
> 18.   Because UBS has redacted all financial information from Tax Invoice 10039 and apparently has not produced any claim documents pertaining to the bunkerings claimed in Wilhelmsen's Verified Amended Complaint, it is possible that the $3,550,783.66 agreed to in Mod. 4, and then billed by Tax Invoice 10454, represents payment of those "Government Claims" referenced in the Settlement Agreement. Even if an unredacted Tax Invoice 10039 were to reveal that it was for an amount other than $3,550,783.66, the difference could still be (a) amount attributable to the bunkerings claims in Wilhelmsen's Verified Amended Complaint (the other portion of the "Government Claims") or (b) additional UBS submissions and negotiations that occurred after the initial submission of Tax Invoice 10039.
>
> 19.   Therefore, Tax Invoice 10454 does not change my conclusion that the claims on which UBS was paid most likely were the "Government Claims" referenced in the Settlement Agreement, thus obligating UBS to pay Wilhelmsen the $2,087,891.75 owed to Wilhelmsen under numbered paragraph 6 of the Settlement Agreement

(Uscher Aff., ¶¶ 17-19) (emphasis added).

Hence, despite UBS' representations to the contrary, UBS has provided no evidence to show that it was paid for "another" claim. Indeed, Mod. 4 supports the contention that the settlement between DESC and UBS covered the Government Claims because Mod. 4 (at page 2 of 2) specifically cites to a claim submitted within one day of Tax Invoice 10039 and references that claim as for Sasebo, Japan:

9

> 1.   ***On March 8, 2007***, USS-UBS <u>*submitted*</u> a claim under Item 765-61 ***(Sasebo, Japan)*** in accordance with FAR 33.206 for $3,550,783.66 for costs incurred in response to the Government's request for surge capabilities to meet requirements that did not materialize.

(Frevola Affidavit II, ¶ 17, Ex. 22) (emphasis added).

Rather than having provided "support" for the conclusion that UBS was paid on another claim before the government, UBS has confirmed the following or documents from DESC have shown the following:

- UBS was paid $3,550,783.66 by the U.S. Government;

- That payment was made in December 2007;

- It was made in settlement of a claim referenced as "submitted" on March 8, 2007;

- It was for losses claimed with regard to services performed at Sasebo, Japan;

- UBS' Tax Invoice 10039 dated March 7, 2007 (but unknown to Wilhelmsen whether it was submitted to DESC on March 8, 2007) is part of UBS' "Sasebo Claim";

- UBS is obligated under the Settlement Agreement to pay $2,087,891.75 to Wilhelmsen if it is paid for its claims under Tax Invoice 10039; and

- UBS has only provided redacted documents concerning the submission of its Government Claims and has refused to provide any amplifying documents to clarify the basis on which it was paid by the U.S. Government.

According to Mr. Uscher, who advises clients on government procurement issues, the facts above strongly suggest that UBS' Government Claims have been paid. (Uscher Aff., ¶ 12). As Mr. Uscher has explained to this Court, the payment by DESC in December 2007 is most likely for the Government Claims. (Uscher Aff., ¶ 12). UBS has the documentation to demonstrate the basis for the December 2007 DESC payment and UBS has the submission made

10

for the Government Claims. UBS has declined to provide this documentation to Wilhelmsen. The Settlement Agreement clearly stated that the Government Claims application and "all correspondence with the U.S. Government concerning the Government Claims" would be provided to Wilhelmsen by UBS. UBS has clearly breached the Settlement Agreement by providing an incomplete application and redacted documents.

UBS has been evasive if not misleading regarding the DESC payment and the Government Claims. If the Government Claims have not already been paid, which seems unlikely, there will be no way to tell if they are paid at a later date. UBS has shown itself absolutely unwilling to adhere to the Settlement Agreement which it has breached on multiple occasions. The dismissal of the underlying action should be vacated.

## POINT II

### UBS IS NOT ENTITLED TO DISMISSAL BECAUSE IT HAS BREACHED THE SETTLEMENT AGREEMENT BY FAILING TO PAY THE $2,087,891.75 OWED FROM THE GOVERNMENT CLAIMS PAYOUT

As explained in Wilhelmsen's Memorandum of Law in Support of Wilhelmsen's Initial Motion, UBS has failed to satisfy a condition precedent to being entitled to the dismissal order in the first place, because UBS did not make the initial payment under the order. Now there is further reason to vacate the dismissal order because UBS has apparently been paid on its Government Claims but has failed to pay Wilhelmsen in accordance with the Settlement Agreement. In addition, UBS has breached the Settlement Agreement by producing incomplete and redacted documents regarding the Government Claims, which will make it impossible for Wilhelmsen to ever establish definitively if and when the Government Claims were or will be paid. That having been said the facts suggest that the Government Claims were paid in December 2007 by DESC.

This Court has the discretion to vacate the dismissal order for UBS' breach of the Settlement Agreement under Federal Rule of Civil Procedure Rule 60(b)(6). Fed. R. Civ. P. R. 60(b)(6); *Nemaizer v. Baker*, 793 F.2d 58, 61 (2d Cir. 1986).

> This portion of the Rule is properly invoked when there are extraordinary circumstances justifying relief, when the judgment may work an extreme and undue hardship, and when the asserted grounds for relief are not recognized in clauses (1)-(5) of the Rule.

*Nemaizer*, 793 F.2d at 63 (citations omitted). Here, clauses (1) to (5) of Rule 60(b) do not apply, the circumstances here are extreme and allowing the dismissal to stand will work an undue hardship on Wilhelmsen.

Here, UBS entered into a Settlement Agreement in which it represented that the Government Claims were related to the bunkering claims of Wilhelmsen set forth in its Complaint. *See* Settlement Agreement (relevant provisions quoted *supra* at 3). In the Settlement Agreement, UBS agreed to provide information regarding the Government Claims to Wilhelmsen and to pursue payment of the Government Claims for the benefit of UBS. *Id.* UBS has not provided the information and appears to have been paid on the Government Claims without paying that money to Wilhelmsen as required by the Settlement Agreement. The very basis on which the action was settled has been negated by these breaches of the Settlement Agreement.

In *Shor Int'l Corp. v. Eisinger Enter., Inc.*, 1993 WL 452546 (S.D.N.Y. Nov. 3, 1993), the Plaintiff Shor moved pursuant to Federal Rule of Civil Procedure 60(b)(6) for an order vacating the order of discontinuance and the settlement agreement on which it was based, and to restore the action to the trial calendar. Almost one year after an order of discontinuance was entered, Shor claimed that the defendant breached the agreement on numerous occasions and

12

showed a lack of good faith. *Id.* at *1. The court denied the motion because Plaintiff failed to show the defendant "materially breached the settlement agreement," but set forth the applicable standard:

> The failure of one party to fulfill its duties under a settlement agreement can constitute an extraordinary circumstance. "Upon repudiation of a settlement agreement which has terminated litigation pending before it, a district court has the authority under 60(b)(6) to vacate its prior dismissal order and restore the case to its docket."

*Shor*, 1993 WL 452546 at *2 (quoting *Fairfax Countywide Citizens Ass'n v. County of Fairfax*, 571 F.2d 1299 (4th Cir.), *cert. denied*, 439 U.S. 1047 (1978)). UBS' actions here are material breaches of the Settlement Agreement by which UBS has repudiated the Settlement Agreement.

The Rule 60(b)(6) standard has been explained as follows:

> The extent of noncompliance necessary to establish a material breach of a settlement agreement under Rule 60(b), Fed. R. Civ. P., is similar to that required in a state law action for recession of a contract. Innocent, inadvertent, or immaterial breaches of a settlement agreement do give rise to a rescission claim. "[B]efore rescission will be permitted, the breach must be 'material and willful, or, if not willful, so substantial and fundamental as to strongly tend to defeat the object of the parties in making the contract.' " *Septembertide Publishing, B.V. v. Stein and Day, Inc.*, 884 F.2d 675, 678 (2d Cir. 1989) (quoting *Callaman v. Powers*, [199 N.Y. 268,] 92 N.E. 747 (1910)).

*Id.* at *2. Wilhelmsen settled this action and accepted as settlement, any payment received by UBS from DESC, related to the bunkering referred to in Wilhelmsen's Verified Amended Complaint. UBS now refuses to provide information regarding the claim made to DESC and payment received from DESC. The object of the Settlement Agreement is defeated by UBS' actions.

13

Furthermore, UBS' actions in redacting documents, providing incomplete claims and refusing to explain the Government Claims or the claim that it alleges have been paid, are deliberate acts which have been performed willfully. These actions have defeated the payment to Wilhelmsen of the agreed sums under the Settlement Agreement.

Here, Wilhelmsen has met the criteria for granting a Rule 60(b)(6) motion and the dismissal order should be vacated.

## CONCLUSION

Wilhelmsen, for the reasons set forth above, respectfully renews its request that the Court vacate its order of dismissal so that Wilhelmsen can enforce its remedies for UBS' failure to pay the full amount due under the Settlement Agreement.

Dated: New York, New York
       May 20, 2008

                HOLLAND & KNIGHT LLP

                By: _____
                     William J. Honan
                     Michael J. Frevola
                     195 Broadway
                     New York, New York 10007-3189
                     Tel:  (212) 513-3200
                     Fax:  (212) 385-9010

                     *Attorneys for Plaintiff*
                     *Wilhelmsen Premier Marine Fuels AS*

# 5294573_v1