Betancourt, Van Hemmen, Greco & Kenyon
Counsel for Defendants UBS Provedores and
Raecorp International
46 Trinity Place,
New York, NY 10006
(212) 297-0050

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
_____X

WILHELMSEN PREMIER MARINE FUELS AS

        07 Civ. 5798 (CM)

    Plaintiff,

  against

UBS PROVEDORES PTY LTD. AND
RAECORP INTERNATIONAL PTY LTD.,

    Defendants
_____X

**MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS'
AMENDED MOTION TO VACATE THIS COURT'S ORDER OF DISMISSAL**

**Preliminary Statement**

Defendants, UBS Provedores Pty. Ltd. and Raecorp International Pty. Ltd. (Collectively "UBS"), by and through their undersigned counsel, Betancourt, Van Hemmen, Greco & Kenyon, submit this Memorandum of Law in Opposition to Plaintiff Wilhelmsen Premier Marine Fuels AS' ("Wilhelmsen") amended motion to vacate this Court's January 14, 2008 Order of Dismissal with Prejudice. UBS incorporates its previous Memorandum of Law in Opposition to Wilhelmsen's Motion to Vacate herein, and makes the following arguments in addition to those previously made in opposition to the relief sought by Wilhelmsen.

Wilhelmsen's new argument in support of its effort to have this Court's Dismissal Order vacated is based on the fact that Wilhelmsen recently learned that the U.S. Government paid money to UBS in December, 2007, and Wilhelmsen wants some of that money. Wilhelmsen admits the money was paid in connection with an invoice different from the invoice referenced in the Settlement Agreement, payment of which would entitle Wilhelmsen to new money. Wilhelmsen admits government documents state that the payment was made in connection with a claim having a different factual premise from the claim referenced in the Settlement Agreement. Nevertheless, Wilhelmsen surmises that the money UBS received from the U.S. Government should be theirs because government paper work relating to the recent payment references Sasebo, Japan and Sasebo, Japan has a connection to the claim in which Wilhelmsen has a stake under the terms of the Settlement Agreement. In fact, UBS has multiple claims submitted with the U.S. Government and at least two relating to Sasebo, Japan. Wilhelmsen's speculation on this issue does not entitle it to the relief it seeks.

Even if Wilhelmsen adduced evidence of a breach of the Settlement Agreement, vacation of the Court's Dismissal Order is not warranted by these facts or the applicable law. Accordingly, Wilhelmsen's motion should be denied.

## The Relevant Facts

1. The Settlement Agreement:

Wilhelmsen initiated this lawsuit on or about June 29, 2007 with the filing of a complaint containing a prayer for maritime attachment. Wilhelmsen alleged in its complaint that it sought payment for a series of contracts for the supply of marine bunker fuel oil to various U.S. Government vessels in Sasebo and Naha, Japan. Wilhelmsen alleged that UBS ordered the marine fuel oil from Wilhelmsen and failed to pay Wilhelmsen for it. It is uncontested that the physical supplier, Sumitomo Corporation, delivered the marine fuel oil to the U.S. Government vessels at Wilhelmsen's instruction.

On or about October 21, 2007, Wilhelmsen and UBS entered into a settlement agreement in connection with this litigation ("Settlement Agreement"). See the Attorney Certification of Jeanne-Marie Van Hemmen in Opposition to Plaintiff's Motion to Vacate the Dismissal Order, hereinafter "Van Hemmen Cert.") at ¶ 2 and exhibit 1 thereto. The Settlement Agreement provided, inter alia, that UBS would execute a consent order which would direct UBS funds attached by various banks to be released to Wilhelmsen. It obligated UBS to pay Wilhelmsen an additional $419,420.49 within a certain period of time. It also provided that UBS would pay WIlhelmsen additional money if the U.S. Government paid UBS for certain government claims defined in one of the whereas clauses in the Settlement Agreement.

The relevant whereas clause states:

      WHEREAS UBS has submitted a claim to the U.S. government under its contract with the Defense Energy Support Center in the amount of THREE MILLION ONE HUNDRED EIGHTY THOUSAND EIGHT HUNDRED FIFTY DOLLARS AND FIFTY-EIGHT CENTS ($3,180,853.58), relating to amounts invoiced pursuant to invoice number 10039 and concerning bunkerings reflected in Exhibit 1, which claim presently is under review by the U.S. government (the "Government Claims")

To date, the U.S. Government has not paid UBS any amounts in relation to the Government Clams. Hennessy Supplemental Declaration, ¶ 4.

2. <u>UBS' Surge Claim</u>

      Prior to negotiating the Settlement Agreement, UBS had submitted other claims to the U.S. Government, in addition to the claim referenced in the Settlement Agreement. One such claim was in connection with UBS' invoice 10040, in the amount of $3,550,783.66 ("Surge Claim"). Invoice 10040 was submitted to the U.S. Government on March 8, 2007, one day after Invoice 10039. Hennessy Supplemental Declaration, ¶¶ 6 and 7 and Exhibit B to the Hennessy Declaration.

      Invoice 10040 related to expenses incurred by UBS when it purchased large quantities of fuel in order to comply with an oral request by the U.S. Government for surge capabilities that did not materialize. The fuel was subsequently sold at a loss. See Exhibit C to the Hennessy Declaration.

      In August 2007, the Defense Energy Supply Center ("DESC"), which had contracted with UBS on behalf of the U.S. Government, requested UBS to submit a "written claim certificate" in connection with the Surge Claim. UBS complied with the request. Hennessy Supplemental Declaration, ¶ 11. In September, the DESC informed UBS, through its issuance of Modification 00004, that it would pay UBS' Surge Claim. UBS then issued Invoice 10454 for the amount indicated in Modification 00004. The government paid that invoice. Hennessy Supplemental Declaration, ¶ 8.

To date, the DESC has not requested UBS to submit a "written claim certificate" in connection with the U.S. Government Claims. Accordingly, no such document exists. Hennessy Supplemental Declaration, ¶ 11.

In correspondence with the U.S. Government concerning its claims, the Surge Claim has been referred to as the "Sasebo Oral Claim" and the Government Claims have been referred to as the "Sasebo Claim - price increase." Van Hemmen Supplemental Certification, ¶ 3, 4 and 5. See Exhibit B thereto.

## ARGUMENT

### Point I

### THE ALLEGED BREACH OF A SETTLEMENT AGREEMENT DOES NOT WARRANT RULE 60(b)(6) RELIEF

Rule 60(b), Fed.R.Civ.P., allows a court, in its discretion, to relieve a party from a final judgment, order or proceeding for one of five specific, narrow reasons. Rule 60(b)(1) - (5). The sixth and final basis permitted under Rule 60(b) is for "any other reason justifying relief from the operation of the judgment." Plaintiff invokes Rule 60(b)(6) as the basis for its request that this Court vacate its January 14, 2008 order ("Dismissal Order") that dismissed this action with prejudice. Plaintiff alleges that UBS breached the Settlement Agreement which resulted in the Court's Dismissal Order and that alleged breach warrants this extraordinary relief. Neither the applicable law nor the facts support Plaintiff's position.

Rule 60(b) strikes a balance between serving the ends of justice and preserving the finality of judgments. Nemaizer, et al., v. Jack Baker, 793 F.2d 58, 61(2d Cir. 1986). Final judgments should not "be lightly reopened." Id., citing Seven Elves, Inc. v. Eskenazi, 635 F.2d 396,

5

401 (5th Cir. 1981). "Since 60(b) allows extraordinary judicial relief, it is invoked only upon a showing of exceptional circumstances." Id., citing Ben Sager Chem. Intern. v. E. Targosz & Co., 560 F.2d 805, 809 (7th Cir. 1977).

Rule 60(b) is designed to afford the parties an opportunity to resolve a dispute on its merits. Nemaizer, citing 7 J. Moore & J. Lucas, Federal Practice, ¶ 60.19 at 156 (2d Ed. 1983). "When the parties submit to an agreed-upon disposition instead of seeking a resolution on the merits, however, the burden to obtain Rule 60(b) relief is heavier than if one party proceeded to trial, lost and failed to appeal." Id. See also Shor Int'l v. Eisinger Enterprises, Inc., 1993 U.S. Dist. LEXIS 15488,*3 ("[t}he rationale underlying the policy [of judgment finality] is even stronger when . . .the party seeks to vacate a settlement agreement. Since both parties entered into the agreement voluntarily and neither was burdened with an unfavorable judicial determination against their interests, any claim of extreme and undue hardship is more difficult to show." Here, Wilhelmsen is seeking relief from the effects of an agreed upon settlement of the underlying dispute. Its burden in obtaining that relief is heavier than if it were seeking relief from a judgment entered after trial of the matter.

Clause 6 of Rule 60(b) is the catch-all provision. It allows judicial relief from a judgment, but only upon a showing of extraordinary circumstances, when the judgment may work an extreme and undue hardship and when the asserted grounds for relief are not recognized in clauses (1) through (5) of the rule i.e. mistake, inadvertence, surprise, or excusable neglect. Nemaizer, 793 F.2d at 63; H. Lewis Collins v. Ford Motor Co., et al., 2007 U.S. Dist. LEXIS 26210, *8. The Second Circuit has never held that the alleged breach of a settlement agreement constitutes the necessary showing of extraordinary circumstances to serve as a basis for Rule 60(b)(6) relief. Trial

courts in the Second Circuit have declined to do so. See, e.g. Collins v. Ford Motor Company, et al., 2007 U.S. Dist. LEXIS 26210, *10 (D.CT. 2007); Shor Int'l v. Eisinger Enterprises, Inc., 1993 U.S. Dist. LEXIS 15488,*3 (S.D.N.Y. 1993). Other courts of appeal have explicitly rejected that notion on the basis that the plaintiff can sue for breach of the settlement agreement and, therefore, there is no undue hardship. Sawka v. Healtheast Inc., 989 F.2d 138, 140 (3d Cir. 1993); Harman v. Pauley, 678 F.2d 479, 481 (4th Cir. 1982); but see Keeling v. Sheet Metal Workers Int'l Ass'n, 937 F.2d 408, 410 (9th Cir. 1991); United States v. Baus, 834 F.2d 1114, 1124 (1st Cir. 1987).

The Third Circuit in Sawka held that, even assuming the defendant had breached the terms of the settlement agreement, that was not a sufficient reason to set aside the judgment of dismissal. Sawka, 989 F.2d at 140. The Third Circuit stated,"[r]elief under Rule 60(b)(6) may only be granted under extraordinary circumstances where, without such relief, an extreme and unexpected hardship would occur." Id. (citing Lasky v. Continental Products Corp., 804 F.2d 250, 256 (3d Cir. 1986). In Sawka, the Court found that extraordinary circumstances were not present since plaintiff could file a separate action on the settlement agreement.

Even if Wilhelmsen had proved a breach of the Settlement Agreement, which is denied, that fact is not an "extraordinary circumstance likely to result in extreme and unexpected hardship" to Wilhelmsen. Wilhelmsen can sue UBS for breach of the Settlement Agreement. Therefore, there is no extreme and undue hardship. Moreover, the available, alternative relief of suing for breach of the Settlement Agreement avoids the deleterious effect resulting from the reopening of a final judgment.

WIlhelmsen has not born its heavy burden under Rule 60(b)(6) to establish extraordinary circumstances resulting in extreme and undue hardship. Accordingly, this Court should deny

Wilhelmsen's motion.

**Point II**

**WILHELMSEN HAS NOT PROVEN
UBS BREACHED THE SETTLEMENT AGREEMENT**

Even if Rule 60(b)(6) relief were available on the basis that one party had breached a settlement agreement, WIlhelmsen has not proven that fact. The Settlement Agreement obligates UBS, in pertinent part, to use its best efforts to recover the "Government Claims" from the U.S. Government and to give a portion to Wilhelmsen if there is a recovery. "Government Claims" is defined in the Settlement Agreement as a claim in the amount of THREE MILLION ONE HUNDRED EIGHTY THOUSAND EIGHT HUNDRED FIFTY DOLLARS AND FIFTY-EIGHT CENTS ($3,180,853.58), relating to amounts invoiced pursuant to invoice number 10039 and concerning bunkerings reflected in Exhibit 1. Exhibit 1 lists a series of deliveries of marine fuel oil to various U.S. Government vessels in Naha and Sasebo, Japan. The evidence establishes that UBS has been trying to get this claim paid but, to date, the U.S. Government has not paid it. Hennessy Supplemental Declaration, ¶¶ 2, 3 and 4.

The evidence also establishes that UBS submitted another claim, the Surge Claim, to the U.S Government. The Surge Claim was not mentioned in the Settlement Agreement. It is for a different amount; it was invoiced under a different invoice number, and its factual premise is completely separate and distinct from the factual premise of the Government Claims. Hennessy Supplemental Declaration, ¶¶ 6, 7, 8 and 9 and exhibit C thereto.

UBS did not produce a written claim certification to UBS in connection with the Government Claims because, to date, the U.S. Government has not requested one. UBS did submit one in

connection with the Surge Claim because one was requested by the U.S. Government in August, 2007.  Hennessy Supplemental Declaration, ¶¶ 10 and 11.

The inferences drawn by Attorney Usher in his affidavit are inaccurate.  Moreover, they ignore information contained in the documents he reviewed.  For instances, Modification 0004 specifically states that it relates to a claim for fuel UBS purchased at the request of the U.S. Government but the U.S. Government did not use.  UBS sold it at a loss.  Exhibit C to the Hennessy Declaration.  This is distinct from the Government Claims which relate to the sale of marine fuel oil in fact delivered to various U.S. Government vessels, as set forth in Exhibit 1 of the Settlement Agreement.  Attorney Usher's speculation does not rise to the level of proof of a breach of the Settlement Agreement.

Attorney Usher also claims that the UBS Claims Correspondence only identifies one Sasebo claim. He speculates modification 0004 must relate to the Government Claims because it referenced "Sasebo, Japan."  In fact, the redacted UBS Claims Correspondence produced to Wilhelmsen reference two Sasebo Claims, the "Sasebo Oral Claim" and the "Sasebo Claim-price increase."  The Government has paid the Sasebo oral Claim, which is the Surge Claim.  Accordingly, UBS Claims Correspondence corroborate the information UBS has consistently provided Wilhelmsen, that the December 2007 U.S. Government payment to UBS did not relate to the Government Claims and does not trigger any obligations under the Settlement Agreement.

## CONCLUSION

For the foregoing reasons, UBS and Raecorp respectfully request this Court deny Plaintiff's motion to vacate the Court's January 14, 2008 Order of Dismissal.

Dated: Red Bank, NJ
       June 17, 2008

                                        Betancourt, Van Hemmen, Greco & Kenyon
                                        Attorneys for UBS Provedores Pty Ltd and
                                        Raecorp International Pty Ltd

                                        By_____/s/_____
                                        Jeanne-Marie Van Hemmen(JV 6414)
                                        46 Trinity Place
                                        New York, NY 10006
                                        (212) 297-0050